## MARYLAND CASUALTY CO. v. MERCHANT.

### No. 11894.

Court of Civil Appeals of Texas. Dallas.

March 23, 1935.

Rehearing Denied April 20, 1935.

Robertson, Robertson & Payne and J. L. Lancaster, Jr., all of Dallas, for appellant.

John W. West and J. A. Carlisle, both of Dallas (J. M. Willis, of Dallas, on the brief), for appellee.

BOND, Justice.

This suit arose under the Workmen's Compensation law (article 8306, et seq. R. S. 1925, as amended [Vernon's Ann. Civ. St. art. 8306 et seq.]). The appellant sustained her alleged injuries on August 13, 1932, and filed a claim for compensation therefor with the Industrial Accident Board on April 8, 1933. From an award by the Industrial Accident Board, appellee appealed to the district court, and after a trial before a jury upon special issues, judgment was entered against appellant for $2,303.56, payable in a lump sum for accrued and future compensation; $250 for operation and medical expenses; and $89 for hospital bills.

It was contended in the court below by appellant, Maryland Casualty Company, the insurance carrier, and properly presented here by assignment of error, that the claim for compensation having been filed with the Industrial Accident Board, more than six months from the date of the alleged injury, and no "good cause" shown for not sooner filing same, the claim is barred. Article 8307, § 4a, R. S. 1925, provides: "Unless the association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the association or subscriber within thirty days after the happening thereof, and unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; or, in case of death of the employee or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity. For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board." The undisputed facts disclose that the claim was not actually filed for approximately eight months after the alleged injury was received. In the pleadings of appellee, the "good cause" asserted for the failure to file the claim within the six months' period is, as follows: "That two or three days after she was injured she told Mr. R. S. Bell, Treasurer of the Skillern & Sons, or its agent, about her being injured, and that at that time the said R. S. Bell, acting as agent for Skillern & Sons, assured her that he would file all necessary claim blanks with the Industrial Accident Board; that she relied on said representations made by said agent, and did not know until April 6th, 1933, that said claim blanks had not been filed with said board; and further, that she went to the hospital in January, 1933, where she remained for some time; that on April 6th, 1933, when she filled out her claim blank she was physically and mentally incapable of transacting business or filling out any kind of blanks, and that she did not learn that the same had not been filed for her by Skillern & Sons until in April, 1933." Skillern & Sons, Inc., was her employer. We have carefully considered the evidence offered, and it fully supports appellee's claim for "good cause" as alleged, and the majority of this court conclude that the pleadings and evidence are sufficient to raise the issue for the determination of the court or jury.

The majority express the view that while the statutory claim for compensation must be filed with the Industrial Accident Board within the six months' period to proceed under the employers' liability act, yet the act as a whole must be given a liberal construction to accomplish the evident intent and purpose of the Legislature in affording a remedy to take care of unforeseen contingencies that might arise in the progress of the proceedings. In providing that the court or board for good cause, in meritorious cases, may waive the strict compliance with the limitations as to notice and the filing of claim before the board, confers a discretionary power on the board or court to be exercised in determining the existence of a good cause. The act does not define the term "good cause," if, in fact, it could be adequately defined to meet every contingency that might arise. Thus, it must be determined by the exegesis of the facts and circumstances of each case. There can be no fast rule laid down to apply to the term, thus the Legislature has left it to the sound discretion of the board or court to determine the issue, reviewable only for abuse of such discretion.

The majority express the opinion that the act requires the injured employee to prosecute his claim for compensation with that degree of diligence that an ordinary person would exercise under the same or similar circumstances or would not do under the same or similar circumstances; that is to say, if an ordinary person, having confidence in his employer, being always obedient to his orders and subservient to his wishes, and relying on his promises, would intrust to him to prepare and file the statutory claim for compensation, then the claim for compensation would not be barred by the limitations. The issue raised is an issue of fact. The record reveals that appellee for some time prior to the injury had been working as a soda fountain dispenser for Skillern & Sons, Inc.; on the day of the injury, she told her employer of the occurrence and on the next day a Mr. Aston, vice president of Skillern & Sons, told her to go to see a Dr. Fay Fry for treatment, and in obedience to his request, she did go to Dr. Fry and was treated by her for the injury sustained; three or four days thereafter she went back to the place of her employment, saw Mr. Aston again, and he sent her to the company's office and there she met a Mr. Bell, an employee of Skillern & Sons, who occupied a desk in the office and in conversation with him he filled in the blank forms of claims for compensation, caused her

to sign the same and "told her that he would send them to the Industrial Accident Board at Austin, Texas." Appellee further testified that she trusted Mr. Bell and her employer and relied upon the promises and agreements made by Mr. Bell, and did not know that he had failed to send the claim for compensation to Austin until about April 6, 1933. In view of these facts, the conclusion is reached by the majority of this court that the issue was clearly raised that appellee acted as an ordinarily prudent person would have acted under the same or similar circumstances, and supports her claim for "good cause" to warrant the board or court to waive the limitations for the filing of the claim during the six months' period. In support of the views expressed by the majority, is the pronouncement of the Beaumont Court of Civil Appeals in the case of Consolidated Underwriters v. Seale et al., 237 S. W. 642, writ of error dismissed by our Supreme Court.

While appellee's testimony is sharply controverted by appellant's evidence—Mr. Bell denying in toto that any such agreement was made, that he had no blanks to make out such claims, did not prepare same as related by appellee, and did not promise to send them to the Industrial Accident Board; yet, if the result of the favorable testimony of appellee raised the issue of "good cause," it became a matter for the determination of the jury. In this the writer agrees.

However, the writer is not in full accord with the majority's views. Mr. Bell was a fellow employee, appellee selected him to perform a duty which the Legislature intrusted to her. Thus, she must be held responsible for his derelict. In my opinion, she cannot escape the responsibility or avoid the consequences of the negligence of her own agent any more so than she can escape the responsibility and consequences of her own. Certainly, if she had prepared the claim for compensation herself intending to send it to the Industrial Accident Board and through inadvertence, or neglect, failed to do so, she could not claim that her own act would raise the issue of "good cause" for the noncompliance with the terms of the statute; then how could the acts of her own agent give her claim a better standing?

The statute quoted above places a limitation on the injured employee to proceed under the law. It is a mandatory provision, and to escape the consequences of a failure to perform its mandate a good cause must be shown; a good cause cannot be judicially constructed on negligent acts of the injured party or the negligent acts of his authorized and intrusted gratuitous agent in failing to perform a mandatory requirement of the law.

In the case of Zurich General Accident & Liability Ins. Co., Ltd., v. Walker (Tex. Civ. App.) 21 S.W.(2d) 334, 340, the injured party, Walker, did not give the notice of his injury to the insurer nor to his employer within 30 days after the happening thereof, and did not file a claim for compensation with respect to such injury within six months of the occurrence. He claimed the excuse for noncompliance with the terms of the statute, that he did not know that his employer carried compensation insurance and did not know that the right existed to claim compensation on account of his injuries, and after receiving such injuries he consulted a doctor, resulting in a serious operation and a confinement to his home for several months, being all the while ignorant of the fact that a policy of compensation had been issued, and unaware that the insurance company was legally liable for his injuries. After learning of these facts, he filed the necessary notice and claim for compensation after the six months' period. The Fort Worth Court of Civil Appeals held, "In this case the uncontradicted evidence shows that Walker, as employee, had no notice of the fact that his employer was a subscriber until shortly before the claim was filed before the Industrial Accident Board. Therefore, under Bailey v. Texas Indemnity Ins. Co., 14 S.W.(2d) 798, by the Commission of Appeals, the employee was not derelict in failing to give notice * * *" and affirmed the judgment of the lower court. A writ of error was granted in that case by our Supreme Court, and in an opinion by the Commission of Appeals, approved by the Supreme Court, 35 S.W.(2d) 115, 117, the court said "Defendant in error, being conclusively presumed at the time he was injured to have had notice of the fact that his employer had made provision for compensation insurance, cannot plead absence of actual knowledge as good cause for his failure to give notice of his claim and bring suit within the period required by the Compensation Law," thus reversing the Fort Worth Court of Appeals and rendered judgment for the insurance carrier.

In the case of New Amsterdam Casualty Co. v. Keller (Tex. Civ. App.) 62 S.W.(2d) 637, the injured employee, Keller, was directed by his employer to go to Dr. Leake for treatment, and while being treated by Dr. Leake the doctor agreed "to see about getting his compensation for him under the Workmen's Compensation law." The agreement was

urged in that case as "good cause" for failure to comply with article 8307, § 4a, R. S., the Fort Worth Court of Appeals held "Even if we assume, and we do not, that he was justified in relying, on October 14, 1930, on Dr. Leake to act for him in obtaining his compensation, still he cannot continue for a year to see nothing done about the matter, never remind Leake or inquire whether the notice was given or what the progress of his claim was, and now expect the courts to reward his laches. No 'good cause' was shown under article 8307, § 4a, R. S."

The writer is of the opinion because of the limitation placed on proceedings brought under the compensation law, the negligence of the injured employee or the negligence of the agent, as in this case, furnishes no ground whatsoever for "good cause" to authorize the court or board to waive the mandatory provisions of the statute, and that the judgment of the lower court should be reversed and here rendered for appellant on the ground that no good cause is shown to exist for a noncompliance with the statute.

■ Appellant challenges the action of the trial court in submitting to the jury special issue No. 13 which reads, as follows: "Do you find from a preponderance of the evidence that good cause existed for the plaintiff's failure to file her claim with the Industrial Accident Board before April 8th, 1933?" To which the jury answered "Yes." Manifestly, this charge furnishes to the jury no guide to determine the issue of "good cause." It leaves to them to express an opinion but nothing more, than the result of a mere guess or conjecture. The issue does not limit the jury to matters pleaded and proved. Appellee alleged and testified, which was sharply contradicted by appellant's testimony, that she told a fellow employee, a Mr. Bell, to file her claim for compensation for her, and that he promised to do it, and that she relied upon his promise, thus limiting the inquiries as to whether or not the agreement was made; whether or not appellee relied on the agreement, and whether or not such agreement and reliance under the circumstances was "good cause" for appellee's failure to file her claim with the Industrial Accident Board before April 8, 1933. An issue which simply inquires, as in the instant case, as to whether or not "good cause existed" for failure to file a claim for compensation within the statutory period does not limit the jury to the matters claimed for the derelict. There is no way of knowing what factors the jury took into consideration in answering the special

issue in the affirmative. It is clearly an assumption that a good cause existed without specifically calling the jury's attention to the matters relied upon for such good cause. We sustain appellee's assignment which necessitates a reversal of the case.

■■ Appellant further contends that the court erred in allowing appellee the $250 operation and medical expenses, and $89 for hospital bills incurred by her after the four weeks of the alleged injury. We must sustain this assignment.

Article 8306, § 7, Revised Statutes 1925, provides that "During the first four weeks of the injury, dating from the date of its infliction, the association shall furnish reasonable medical aid, hospital services and medicines. * * * During the fourth or any subsequent week of continuous total incapacity requiring the confinement to a hospital, the association shall, upon application of the attending physician or surgeon certify the necessity therefor to the Industrial Accident Board and to the association, furnish such additional hospital services as may be deemed necessary not to exceed one week, unless at the end of such additional week the attending physician shall certify to the necessity for another week of hospital services or so much thereof as may be needed. * * * " There is no contention made that the medical aid and hospital service for which the allowance was made were incurred by appellee within the four weeks after the infliction of the alleged injury, or that the conditions and requirements of the quoted statute existed for which such services may have been allowed after the expiration of the four weeks. The testimony is undisputed that the aid and services allowed in the judgment were furnished approximately six months after the alleged injury, therefore, under the claimant provisions of the statute the court was not authorized in allowing appellee the recovery for such items. This assignment alone, however, would not authorize this court to reverse the case, as the matter comes within the power of this court to correct the error by a reformation of the judgment.

Appellant assigns error based on inflammatory argument and misconduct of appellee's attorney, which we are constrained to hold are sufficient to cause a reversal of the judgment and remand the cause for a new trial. In passing, we may state it is to be regretted that attorneys will so conduct themselves as to suffer the penalty of their clients' case being reversed on matters arising out of their

798

own improper conduct. It must be borne in mind that favorable findings of a jury and a judgment of a court are not the ends to attain, except by an orderly process of trial, free from inflammatory conduct, and matters dehors the record. The misconduct of the attorney complained of will not likely occur on another trial, and, as the case must be reversed and remanded for the other reasons, as above stated, we forego any further discussion of the assignments based on the misconduct of the attorney.

Believing that the court erred in the matters above mentioned, the judgment of the lower court is reversed, and, on the decision of the majority of the court, the cause is remanded. The opinion of the writer, for the reasons stated above, is that the judgment should be reversed and here rendered for the appellant.

Reversed and remanded.