# FEBRUARY, 1939

PETROLEUM CASUALTY COMPANY V. JIM DEAN.

No. 7094. Decided January 4, 1939.
Rehearing overruled February 1, 1939.
(122 S. W., 2d Series, 1053.)

*Stone & Wells,* of Henderson, *Powell, Wirtz, Rauhut & Gideon,* of Austin, and *K. W. Gilmore,* of Houston, for plaintiff in error.

Where claimant's only excuse for not filing his claim for compensation with the Industrial Accident Board within the time required by statute was that he had been advised and led to believe by the physicians of his employer that he was not

suffering from his being gassed while engaged in the scope of his work, but that he was suffering from other causes, not connected with his employment, it was reversible error for the court, over objection of plaintiff to submit the special issue asking if the claimant had shown good cause for not having filed his claim before the Industrial Accident Board prior to the time he did file it, and in not limiting the inquiry to the excuse which he offered, and otherwise permit the jury to consider any excuse which they might consider a good cause. Texas Emp. Ins. Assn. v. Johnson, 89 S. W. (2d) 1112; Texas Emp. Ins. Co. v. Fulkes, 75 S. W. (2d) 320; New Amsterdam Casualty Co. v. Scott, 54 S. W. (2d) 175.

*Futch,* of Henderson, *Charles S. Campbell,* of Jackson, Miss., *Roy L. Aterbury,* of Houston, for defendant in error.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This is a compensation case. Humble Oil & Refining Company was the employer, Jim Dean the employee and Petroleum Casualty Company the insurer. Dean recovered judgment in the trial court against the insurer for compensation at the rate of $19.50 per week for a period of 401 weeks and the judgment was affirmed by the Court of Civil Appeals. 92 S. W. (2d) 1140.

The claim for compensation was not filed with the Industrial Accident Board within the statutory period, and the only question which we shall consider and decide is whether or not the evidence raised an issue of fact as to the existence of good cause for the delay. Our statutes provide in Article 8307, Sec. 4a, that a claim for compensation shall be made within six months from the injury, but provide further that for good cause the board may, in meritorious cases, waive the strict compliance with the requirement.

Dean claims to have suffered an injury by inhaling gas in the course of his employment on November 13, 1931, and filed his claim for compensation with the Industrial Accident Board on October 29, 1932. It thus appears that his claim was filed 11 months and 16 days after the date of the injury.

In considering the facts claimed to raise the issue of good cause for the delay we do so in the light of the following well established rules, concerning which there was formerly some uncertainty in the decisions.

1. The period of six months provided in the statute for the filing of a claim with the Industrial Accident Board begins to run on the date of the injury and not on any subsequent date. Indemnity Ins. Co. of North America v. Williams, 129 Texas 51, 99 S. W. (2d) 905; Texas Employers' Insurance Association v. Guidry, 128 Texas 433, 99 S. W. (2d) 900; Williams v. Safety Casualty Co. (Civ. App.) 97 S. W. (2d) 729. The latter case was reversed on other grounds in 129 Texas 184, 102 S. W. (2d) 178, but the holding by the Court of Civil Appeals on this question was expressly approved.

2. When a claim is not filed within the statutory period of six months the good cause must continue to the date when same is actually filed. Williamson v. Texas Ind. Ins. Co. 127 Texas 71, 90 S. W. (2d) 1088; Holloway v. Texas Ind. Ins. Co. (Com. App.) 40 S. W. (2d) 75.

3. The claimant is conclusively deemed to have had notice of the fact that his employer had provided workmen's compensation for his protection from the time of the receipt by the Board of notice of that fact. Article 8306, Sec. 3c; Zurich Accident & Fidelity Ins. Co., Limited v. Walker, (Com. App.) 35 S. W. (2d) 115. In this case it was shown that Dean at all times had in his possession a "yellow slip" furnished him by his employer advising him that compensation insurance had been provided, and that Petroleum Casualty Company was the insurance carrier, giving its address.

The evidence on the question of good cause, hereinafter set out, is taken from the testimony of the claimant and his attorney and we consider it in the light most favorable to his case. According to his testimony he inhaled some gas on November 13, 1931, while working for the Humble Oil & Refining Company in Texas. He was placed under the care of his employer's physicians and remained in Texas under their care until February 9, 1932, approximately three months. On the last named date he returned to his former home in Mississippi. Thereafter he consulted a physician of his own selection in Mississippi and was advised by such physician on April 10 or 11, 1932, that his condition was the result of his having been gassed. According to his testimony the Texas physicians provided by his employer led him to believe that his condition was the result of some cause not connected with his employment, but when he was advised on April 10 or 11 by his own physician that his condition was the result of his having been gassed, that confirmed him in the view which he had theretofore entertained and led him to the definite conclusion that his

incapacity resulted from being gassed. It is earnestly insisted that there was no evidence supporting the conclusion that he was misled by the Texas physician, but we give Dean the benefit of any doubt on that question and dispose of the case on the theory that good cause existed until April 11, 1932.

Dean employed an attorney in Jackson, Mississippi, in March, 1932. It appears that he was the holder of some character of insurance policy issued by Aetna Life Insurance Company. The attorney pressed that claim until it was paid in July, 1932. It also appears that the employer had provided certain benefits for its injured employees and the attorney had some correspondence with the company in reference thereto. One of the suggested good causes for failure sooner to file the claim for compensation was that the attorney believed that the payments made by the employer represented payments under the Workmen's Compensation law. We question whether that could be urged as a good cause at all, but need not decide it, for the attorney testified that he saw one of those checks shortly after April 21, 1932. This was prior to the expiration of the six months period following the injury. That check disclosed that it was not compensation paid by the carrier.

The Mississippi attorney was not familiar with the Texas statutes and did not go to the trouble to look them up, but instead wrote to a Texas attorney about July 1, 1932. This attorney promptly advised him that he was disqualified to handle the matter. Later by letter dated July 26, 1932, he wrote to another Texas attorney and was promptly advised that this attorney was also disqualified to handle the matter. He wrote to a third attorney who accepted employment, and the matter was placed in his hands on August 11, 1932, two months and sixteen days before the claim was filed and more than four months after the Mississippi attorney was employed.

The suggestion is made that the claimant was too sick to look after the filing of his claim. The record does not bear out this contention. It affirmatively discloses that the claimant made at least four or five trips from his home to Jackson, Mississippi, to consult with his attorney prior to the final settlement of the claim against Aetna Life Insurance Company in July, 1932. This distance was more than forty miles.

It is claimed that the time of two and one-half months required by the Texas attorney who was finally employed was a reasonable time within which to make an investigation of the merits of the claim. The practice of investigating the merits of a claim is, of course, not condemned, but we need not con-

sider whether the law would grant that much time for investigation, for the right to file a claim had already been lost before the Texas attorney was employed.

The testimony of the Mississippi attorney leaves no doubt as to the real cause of this delay. While on the witness stand he asked the court if he might state what the reason was for the delay. Upon being advised that he might do so he replied: "The reason was, I was trying to get evidence from these doctors to use in prosecuting the claim and trying to employ a lawyer who was in a position out here to advise as to Mr. Dean's right and to represent him." He further testified that he lived in Jackson, the State Capital; that there was a copy of the Texas statutes in the Supreme Court library in that city which was available to him; that he could have gone to the capitol building and read those statutes, "but I didn't have any idea that the limitation was so short." At another place in his testimony he was asked this question: "You did not take any precaution then whatever to look up the law yourself, which was available in Jackson, Mississippi, for you? A. No, I had no idea that the limitation was so short." At still another place in his testimony he was asked this question: "You didn't know but what there was some limitation to it?" To which he replied, "No, I did not know. I assumed that the limitation was what the limitation was in ordinary damage suits in both states, which is from one to six years." And still at another place we find this testimony: "Q. And there was not anything to keep you from getting Mr. Dean to file a claim at any time that he asked you to? A. Nothing, except my lack of knowledge of the short limitation of time. Q. I am talking about if he had asked you to do it and told you the time expired? A. No, unless he had been too ill and then I could have gone to see him and would have if I had known about the short limitation."

This final bit of testimony throws some light upon the question: "Q. You know as a matter of fact that not only a lawyer but the laymen are presumed to know the law? A. If they are residents of the State where the law is, they are. Q. That is your position? A. Yes, sir."

This testimony is too plain to require any construction or analysis. It simply is to the effect that the only reason this claim was not filed in time was because the Mississippi attorney did not know the law governing his client's rights and acted upon an erroneous assumption as to its requirements. This does not raise an issue of fact as to good cause. Had the

claimant employed a Texas attorney, it would hardly be contended that his ignorance of the law would constitute good cause for his not timely filing the claim. The proposition is too elementary to require discussion that claimant's asserted rights rest upon the Texas statutes; without them he would have no rights at all, and, of course, it follows that these same statutes measure those rights regardless of where he may live and whom he may employ to represent him.

Counsel appearing here for the claimant do not contend that ignorance of the law is a good cause for delay, but the difficulty of their position lies in the fact that the only person who was in position to know the real cause testified that there was nothing to keep him from getting Dean to file a claim at any time except his lack of knowledge of the short limitation of time. We cannot close our eyes to this positive testimony. It effectively negatives the existence of any good cause recognized by law.

We can perceive no reason for remanding this cause for another trial. The claimant and his attorney have had opportunity to testify fully upon the question. They have given that testimony, and, of course, it would be the same upon another trial. As a matter of law it is insufficient to raise an issue of fact, and it is accordingly ordered that the judgments of the trial court and the Court of Civil Appeals both be reversed and judgment here rendered that defendant in error take nothing.

Opinion adopted by the Supreme Court January 4, 1939.

Rehearing overruled February 1, 1939.