CONSOLIDATED CAS. INS. CO.

v.

PERKINS.

No. 6735.

Court of Civil Appeals of Texas.

Texarkana.

April 22, 1954.

Rehearing Denied June 24, 1954.

Baker, Botts, Andrews & Parish, Otto
J. Weber, Jr., Frank G. Harmon, Wallace
B. Clift, Jr., Houston, for appellant.

Gordon R. Wellborn, Rex Houston,
Henderson, for appellee.

HALL, Chief Justice.

· This action was instituted by appellee for compensation for an alleged injury he sustained on or about April 30, 1950.

Appellant among other defenses set up and relied strongly upon the allegation of appellee's lack of good cause in filing his claim with the Industrial Accident Board after the six months' period had elapsed. Appellee alleged and contended that he had good cause for failure to file his claim with the board up until the time it was actually filed which was some seventeen months after his alleged injury.

Trial was to a jury on special issues and resulted in a verdict favorable to appellee, upon which the trial court entered judgment for appellee for total disability at at the rate of $25 per week for 401 weeks.

Appellant's first three points assert that the trial court erred in (1) overruling the defendant's motion for an instructed verdict and refusing to enter judgment for appellant because the evidence established as a matter of law that plaintiff did not have good cause for his failure to file his claim for compensation within the statutory six months' period from the date of his alleged injury on April 30, 1950; (2) that the trial court erred in submitting to the jury the special issues in his charge relating to appellee's good cause for failure to file his claim with the board for the reason that the evidence upon which the issues were based fails as a matter of law to show good cause; and (3) that the evidence was wholly insufficient to support the answers of the jury to such issues, and the answers to same were against the great weight and preponderance of the evidence.

The facts show that appellee at the time of his alleged injury was employed by the Sinclair Oil & Gas Company as a pumper on some of its leases in Rusk County; he worked at night and had control of several pumping units. He had been employed by the Sinclair Oil & Gas Company for over twenty years and for a good portion of that time in the production department working as a pumper. On the night of his injury, and at the very time he claimed he received his injury, he was attempting to crank a gasoline motor which operated pumping units under his charge. The testimony shows that the engine had been worked on and was stubborn or hard to start. It had to be cranked by hand. Appellee got help, and in attempting to crank the engine appellee testified that he strained himself in the region of his heart; that he felt something pull loose which caused some pain. Appellee finished his night shift and continued to work. About May 5th, some five days after his alleged injury, he consulted a physician in Jacksonville, Texas, who made an examination of his heart by taking an electrocardiogram. On or about May 14, 1950, following his alleged injury on April 30, 1950, appellee received a communication from his physician stating the results of the electrocardiogram test and requesting that he lay off from his work for three to five months. Appellee presented this letter to his immediate superior and he was allowed to take a lay-off for several months, with full pay for a while and one-half pay for the balance of the time. He did not work any more for the company as a pumper, or in any other capacity. He received the one-half pay

under the terms of Sinclair's contract with the union, although appellee was not a member of the union, until sometime in July, 1951. It was appellee's desire, expressed to his superiors, that he be given a light job. His testimony is that his foreman, Mr. Slayton, told him that he would be given a light job with the Sinclair Company. It is appellee's testimony that he knew of other employees of Sinclair who had been given light jobs on account of disability. He also testified that he made inquiry of his superiors with respect to filing a claim with the Industrial Accident Board and that they told him first, he could not file a claim while on the payroll of the Sinclair Oil & Gas Company; and second, that they would notify him when to file his claim with the board. Appellee testified that he knew of instances where officials of the Sinclair Company had assisted injured employees in filing their claims with the Accident Board and in this he was corroborated by Sinclair's Assistant Superintendent Buser; that during the period of time he was allowed to lay off from his job—about May 14, 1950, until the 16th day of August, 1951—appellee testified he was led to believe that he could not file a claim with the board because of being on the payroll of the Sinclair Company, and that his superiors would tell him when to file his claim. It is appellee's testimony also that he did not know he was separated from his employment with the Sinclair Company until August 16, 1951. His last pay-check was delivered to him in July, 1951. The next day after he received the information that he had been separated from his employment with the Sinclair Oil Company August 16, 1951, he contacted attorneys in Henderson, Gordon R. Wellborn and Rex Houston, and employed them to handle his case before the Industrial Accident Board. Attorney Rex Houston testified that they immediately wrote the Industrial Accident Board for claim blanks but on account of its being the board's vacation period it took some two weeks or more to receive the blanks; that as soon as he could make an investigation of the claim of appellee and get the blanks from the board he prepared the claim and filed it with the Industrial Accident Board on or about the 5th of October, 1951. Numerous issues were submitted to the jury covering the good cause feature of the case, that is, whether the statements claimed by appellee were made to him by his superiors and whether he believed said statements, acted upon them, and whether all the statements taken together so made and acted upon constituted good cause for his failure to file his claim with the board within the six months' period described by R.S., Art. 8307, § 4a.

All issues submitted to the jury were answered in favor of appellee with the exception of No. 24, which inquired whether "Clem Buser of Sinclair Oil & Gas Company advised plaintiff (appellee) approximately four months after April 30, 1950, that he could not make a claim for compensation as long as he remained on the company payroll." All issues submitted to the jury find support in appellee's testimony, and some of them find additional support in the testimony of other witnesses. It is practically undisputed that appellee received an injury on or about the 30th day of April, 1950, while employed by the Sinclair Company which has totally incapacitated him as a laborer.

 The issue of good cause is universally held to be one of fact for the trier of the facts, in this case a jury, and the findings of the jury "must be upheld unless the respondent [appellee] failed to meet the test of good cause for delay. Such test for delay is that of ordinary prudence, that is, such course of conduct as would be pursued by an ordinarily prudent person acting under the same or similar circumstances." Texas State Highway Department v. Fillmon, 150 Tex. 460, 242 S.W.2d 172, 176, citing cases. See also Anchor Casualty Co. v. Beeler, Tex.Civ.App., 245 S.W.2d 303 (writ ref., n. r. e.). Many more decisions might be cited sustaining the above proposition but it would unduly encumber this opinion. They are amply collated under key numbers 1283, 1924 and 1927, Workmen's Compensation, Texas

Digest. Moreover, cases of this character always present fact issues which are determined by the evidence peculiar to the particular case and are at most only persuasive. We have carefully examined the record in its entirety and have concluded that the testimony considered in the light most favorable to the verdict, as we must, presents probative testimony sufficient to support the verdict of the jury, and we are not authorized to overturn same. Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989; Williamson v. Texas Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088.

Appellant states in its brief that "if good cause existed up until August 16, 1951 (which it denies) there certainly was no good cause for plaintiff's (appellee's) attorneys' failure to file a claim from August 17, 1951, until October 5, a period of over one month and a half." Rex Houston, one of appellee's attorneys, who handled the filing of his claim with the Industrial Accident Board, as heretofore pointed out, testified in the case. In substance his testimony is that appellee came to his office and employed his firm on or about August 16, or 17, 1951, to handle this case for him; that he immediately wrote the Industrial Accident Board for blanks to give notice to the board of appellee's claim for injury; that the board was tardy by some two or three weeks in sending the claim blanks. In the meantime, this attorney was conducting an investigation of appellee's case. The answer of the jury to the issue making inquiry with respect to the attorney's diligence in this matter is fully supported by the record. We realize that it has been held that negligence of a claimant's attorney in filing a claim is imputed to the claimant. Petroleum Casualty Co. v. Dean, 132 Tex. 320, 122 S.W.2d 1053; Great American Indemnity Co. v. Dabney, Tex.Civ.App., 128 S.W.2d 496. But under the evidence adduced in this case, as stated above, the jury was fully warranted in answering that appellee's attorneys were diligent and prudent in filing his claim with the Board. These points are respectfully overruled.

Appellant by its points 6, 7 and 8 contends that the trial court erred (a) in refusing to receive the verdict of the jury as originally returned in which no answer was made to special issue No. 17, there being no conflict in the jury's findings; (b) in orally instructing the jury to disregard the instruction with respect to special issue No. 17 and to return to the jury room and see if they could answer No. 17, for the reason "the submission of special issues No. 13 and No. 15, and the subsequent oral instruction to disregard the written instruction in connection with No. 17 had the effect of inducing the jury to give the same answer to special issue No. 17 as was given to special issues No. 14 and No. 16, and constituted a comment upon the evidence." The facts are that the jury was instructed in the original charge with respect to special issue No. 17: "If you have answered special issue No. 15 by 'No,' and in that event only, then you will answer this issue." Special issue No. 15 inquired of the jury whether there was an employee in the same class as appellee working substantially the whole of the year immediately preceding April 30, 1950, in the same or similar employment, in the same or a neighboring place. This issue was answered "Yes." Special issue No. 16 inquired what was the average daily wage of said other employees and the jury answered "$14.96." Special issue No. 13 inquired of the jury whether appellee worked in the employment in which he was working on April 30, 1950, substantially the whole of the year immediately prior to April 30, 1950. To this issue the jury answered "Yes;" and in answer to special issue No. 14 it was stated that his average daily wage was $14.96. There is no evidence in this record to sustain the answers to special issue No. 13 and special issue No. 15. It is undisputed that appellee worked only 260 days during the year next preceding his alleged injury on April 30, 1950. It is also undisputed that no other employee in the same class as appellee worked more than 260 days for the year immediately preceding April 30, 1950.

When the jury originally returned its verdict into court the trial court read the same aloud and asked the jury if they had all agreed upon the answers made to the issues, the following incident occurred as shown by the statement of the trial court placed in the record: "At that time no answer had been made to special issue No. 17. At that time Mr. Rex Houston, one of the attorneys for the plaintiff arose and addressed the court, asking with reference to any answer that the jury may have made to special issue No. 17. Thereupon both counsel for the plaintiff and counsel for the defendant came to the judge's bench and held a conversation with the court in low tones where the jury could not hear it, at which time the court stated the jury had not answered special issue No. 17 and showed the charge to said attorneys with reference to said issue No. 17. Thereupon Mr. Houston requested the court to instruct the jury to return to the jury room and disregard said instruction given in connection with special issue No. 17, which instruction had instructed the jury to answer special issue No. 17 only in the event they had answered special issue No. 15 'No.' and see if they could answer said special issue No. 17.

"The court at first stated that he did not see how he could do that and counsel for the defendant objected to the court so doing, and insisted that the answers by the jury be received as they were. Upon reflection, the court told counsel for the defendant that he was going to instruct the jury to disregard the instruction given in connection with special issue No. 17 and have the jury to return to the jury room and see if they could answer said special issue No. 17, and told counsel for the defendant that they might have a full bill with reference to the action of the court, in so doing, and then turned to the jury and read to them the instruction given in connection with special issue No. 17 and instructed them to disregard said instruction and return to the jury room and see if they could answer special issue No. 17.

"The jury did return to the jury room and in about five minutes reported back to the court room to the effect that they had answered special issue No. 17 and the charge and answers were again delivered to the court. Whereupon the court again checked said charge and the special issues that had been submitted to the jury and found all issues answered exactly as they had been answered when the jury first reported to the court except special issue No. 17 which was then blank and which was now answered $14.96. Whereupon the court asked said jury if the answer then made to special issue No. 17 was their verdict and if they had all twelve agreed upon the answer thereto, and further asked the jury again if their answers made to each of said special issues as they now existed in said charge constituted their verdict, and if they had all agreed upon the answers therein given, to which the jury responded that they had, including said special issue No. 17. Whereupon the court accepted the verdict and discharged them."

■ The trial court clearly committed error in orally instructing the jury to disregard his previous written instructions with respect to answering special issue No. 17 and sending the jury back to see if they could answer same. Rules of Civil procedure 286, 293 and 295. These rules require that all instructions given to the jury and the communications with the jury by the court must be in writing. But is the error such that when taken in connection with Rule 434 harm must be presumed and the judgment reversed? We think not. Chief Justice Alexander in Denbow v. Standard Accident Ins. Co., 143 Tex. 455, 186 S.W.2d 236, in discussing a situation very similar to this one, stated very clearly: "The Court of Civil Appeals was of the opinion that since the court's instruction to the jury to reconcile the supposed conflict was oral instead of in writing, harm must be presumed, and reversal must follow. We are not in accord with this holding. Rule 295 must be read in the light of the provisions of Rule 434, which reads in part as follows: 'Provided, first, that no judgment shall be reversed on appeal and a new trial ordered in any

cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from· making·a proper presentation of the case to the appellate court; * * *.' These two rules constitute a part of the same set of rules and necessarily they must be read together. When these two rules are read and construed together it will be seen that while Rule 295 requires the trial court to point out the supposed conflicts in the verdict in writing, yet under Rule 434 the case will not be reversed on the ground that the instruction was not in writing, unless the failure to give the instruction in writing was reasonably calculated to and probably did cause the rendition of an improper judgment or probably prevented the appellant from making a proper presentation of the case to the appellate court. This is the only reasonable construction that can be placed on these two rules when read together. In other words, if it be held that Rule 434 is not applicable when a rule has been disobeyed or the law otherwise violated, then there would be no need for Rule 434, for this latter rule becomes applicable only when 'the trial court has committed an error of law.' In this case the oral instruction given by the trial court was short. It was not confusing, but was easily understood. It was not an instruction·on the law in the case. It was made in the presence of counsel for both parties, and the exact words of the judge were preserved. No contention is made that appellant was prevented from making a proper presentation of the alleged error to the appellate court. The instruction was no more harmful when given orally than it would have been if given in writing. For these reasons reversal should not have followed merely because the instruction was

oral." See also City of Galveston v. Hill, 151 Tex. 139, 246 S.W.2d 860; Ross v. Texas Employers' Ins. Ass'n, Tex.Sup., 267 S.W.2d 541; Cantu v. Cantu, Tex. Civ.App., 253 S.W.2d 957; also Rules 434 and 503, Rules of Civil Procedure. We cannot perceive of any harm to appellant resulting from the action of the trial court in giving the oral instruction to the jury with respect to issue No. 17. It is admitted by both parties that special issue No. 13 inquiring whether appellee worked substantially the whole of the year immediately prior to his alleged injury, and special issue No. 15 inquiring whether another employee in the same class as appellee worked substantially the whole of the year immediately preceding the date of the alleged injury to appellee, were unsupported by the evidence and should not have been given. Upon motion by appellee, agreed to by appellant, the answers to these issues were disregarded and judgment was entered on the answer to issue No. 17, that is, that the sum of $14.96 per day was just and fair to both appellee and appellant. Without an answer to issue No. 17 the court would have been powerless to enter a judgment. The court no doubt realized this situation and it furnished the basis for the charge to the jury to disregard his instructions not to answer special issue No. 17, and return to the jury room and see if they could answer special issue No. 17. The court did not suggest or intimate how issue No. 17 should be answered but left the jury free to answer it as it saw proper under the evidence. This it did "in about five minutes." Under Rules 434 and 503, and the decisions cited construing them, we are unable to see where appellant's rights have in any wise been abridged. This point is overruled.

We have carefully examined all other points advanced by appellant and in our opinion they are without merit and are respectfully overruled.

The judgment of the trial court is affirmed.