**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellant,**

v.

**Nolan P. DOSS, Appellee.**

No. 10462.

Court of Civil Appeals of Texas.

Austin.

March 20, 1957.

Rehearing Denied May 1, 1957.

Camp & Camp, Cameron, Burford, Ryburn, Hincks & Ford, Logan Ford, Clarence A. Guittard, Joseph M. Stuhl, Dallas, for appellant.

Robert C. Nelson, Enos T. Jones, Rockdale, for appellee.

GRAY, Justice.

This is a workmen's compensation case. Appellee, Nolan Doss, was an employee of Aluminum Company of America (later called ALCO) at its plant at Rockdale, Texas, and appellant, Texas Employers Insurance Association, was the workmen's compensation insurance carrier.

ALCO also carried health and accident insurance with Metropolitan Life Insurance Company (later called Metropolitan) covering ALCO's employees for off-the-job sickness and accidents.

Appellee was employed in the pot rooms of ALCO. In these rooms there were larger pots or vats used for melting aluminum ore, they were heated by electricity and the molten aluminum was drained from them by siphons. A part of appellee's duties was to assist in tapping the pots or vats and draining the molten aluminum therefrom.

. On the afternoon of July 2, 1953, appellee was assisting in the performance of his duties supra. He was using a large cast

iron ladle to dip out molten material to prime the siphon, in so doing he brought the ladle too close to the metal of the pot when it was caught by the magnetic force present and pulled or jerked down causing appellee to jerk or wrench his back. At the time appellee felt a pain in his back but did not then complain to anyone. It was near quitting time and he finished the day.

The next morning appellee returned to his job but because his back was hurting he could not work, he so informed his foreman and he was sent to first aid. At first aid appellee told the nurse that his back was hurting but did not tell her he had hurt it on the job. The nurse gave him some character of treatment, then gave him an order to the foreman and he was put on light duty in the pot rooms where he worked until after July 4, 1953.

On the afternoon of July 3, appellee saw the company doctor and two or three times afterwards. X-rays were made and the doctor told him it looked like he had an old injury to his back and said "to take off until I was better." He did not tell the doctor he hurt his back on the job.

Appellee went to his family doctor who examined him, told him that his back was out of shape, that he thought it was a slipped disc but he could not do anything for it and recommended that he go to a back specialist in Temple, Texas. Appellee's wife took him to the specialist in Temple who examined him and made x-rays. The record does not contain his findings.

Appellee remained in bed about four weeks, he suffered severe pain in his back, hips and legs, he was unable to wait on himself and had to take ease medicine. After about four weeks in bed appellee was able to be up some, his condition seemed to improve and after about another month he thought he was able to return to work. He did return and was put on light duty, termed utility, and continued in such light work until his job was eliminated by ALCO. Appellee learned through the union president that his job was going to be eliminated

and also that it was necessary for him to file a claim for workmen's compensation. Immediately after learning this he did file his claim with the Industrial Accident Board on December 20, 1954.

About two weeks after he was injured and while he was confined to his bed appellee's wife went to ALCO's plant and got insurance forms to be filled out for insurance benefits. These forms were brought to appellee's home and were there filled out by appellee and his wife stating that appellee was injured on the job. The form was completed by appellee's family doctor and then mailed to ALCO's employment manager, Mr. Menke. After about a week, not having heard anything as to the claim, appellee's wife called Mr. Menke. Mr. Menke came to appellee's home, brought the form that had been filled out supra and discussed with appellee and his wife the claim for insurance. He brought other forms with him which so far as the record shows were Metropolitan forms. The form originally filled out is not before us but generally from the record it appears to have been a Metropolitan form.

Menke told appellee the form was not filled out correctly because it showed that appellee was hurt on the job. Appellee's testimony as to what Menke told him, in part, is:

"* * * Now, will you tell the jury why you did not file that claim within that six months' period to the Industrial Accident Board in Austin?

"A. Mr. Menke came out to my house and told me—I sent him some forms to be filled out for the insurance, I knew I was entitled to some and I filled in that I had an accident out there, was hurt on the job, and he came out to the house about a week later and told me if I sent those forms in I couldn't get a thing on it, so I asked him if there were any other forms. He said no, there wasn't. I wouldn't get a thing if I filled it in that I was hurt on the job. He said just leave that part

blank and send it in and I would get the paid insurance with the company for sickness, that was the insurance I would get if I wouldn't fill the claim in for unemployment. I don't know anything about that and he didn't tell me anything about it. I thought that was all I was supposed to do. He said it was and I took his word for it.

"Q. Did you believe what he told you? A. I believed in him. He was representing the company, so I figured they knew I was hurt. They should have knew it, I told them I was, filled in that form stating that I was.

"Q. Well, was that within thirty days after you got hurt. A. Yes, sir, about two weeks."

Appellee's wife gave substantially the same testimony as appellee.

A new form or claim was filled out and thereafter appellee received insurance payments from Metropolitan.

Appellee testified that he did not know about workmen's compensation insurance until the union president told him about it.

Appellee received $30 per week from Metropolitan until he returned to work. He received $240. He testified that he could not live on $30 per week and that he had to return to work in order to support his wife and children.

The jury found that good cause existed for appellee not filing his claim within six months, and found total permanent disability. A judgment for appellee was accordingly rendered.

Appellant attacks the finding of good cause and necessarily this question must be disposed of before other questions are material.

Art. 8307, Sec. 4a, Vernon's Ann.Civ.St., in part provides that a proceeding for compensation for injury shall not be maintained

"* * * unless a claim for compensation with respect to such injury shall have been made within six (6) months after the occurrence of the injury or of the first distinct manifestation of an occupational disease; * * *. For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board."

 There appears to be no controversy here as to the thirty days' notice provided for in the portion of Sec. 4a supra not quoted. The controversy is as to the existence of good cause excusing appellee from filing his claim within six months after his injury which is to be determined independent of the merits of his case. The test to be applied is: Did appellee act as a reasonably prudent person would have acted under similar circumstances? This question is usually one of fact but it becomes one of law when only one reasonable conclusion can be reached from the evidence most strongly supporting the claim of good cause. Texas Indemnity Ins. Co. v. Cook, Tex.Civ. App., 87 S.W.2d 830. Er. ref.

At the very time appellee sustained the injury he felt a pain in his back; he told his wife he got hurt on the job and says he has suffered pain continuously since his injury. His first claim for insurance contained his statement that he was injured on the job. There is no evidence in the record tending to show that he did not know he sustained injury while working on the job or that he did not know that his disability resulted from that injury. It is established by appellee's own testimony that he knew when he was injured, that it was while he was working on the job and he himself fixed the time as July 2, 1953. He was confined to his bed for approximately one month and thereafter remained at home for a like period during all of which time he suffered severe pain which he says was caused by his injury. He received insur-

ance benefits for his disability until he returned to limited duty and knew ALCO's doctor would not pass him for heavy work. He was suffering pain from his injury and even after his insurance payments stopped he made no further inquiry as to any kind of insurance. He says he did not know that ALCO carried workmen's compensation insurance, that he did not know he had to file a claim with the Industrial Accident Board until he was so informed by the union president (he had filed a claim with Metropolitan which had been successful for a time and then payments under it ceased), and that he relied on what Mr. Menke told him. No inquiry as to insurance benefits appear to have been made by appellee except to Menke (shortly after the accident) and to the union president immediately prior to the filing of the claim on December 20, 1954.

 Without referring to any evidence tending to dispute appellee's statement that he did not know ALCO carried workmen's compensation insurance he is conclusively presumed to have had notice of that fact. Art. 8306, Sec. 3c, Vernon's Ann.Civ.St. Zurich General Accident & Fidelity Ins. Co. v. Walker, Tex.Com.App., 35 S.W.2d 115. Petroleum Casualty Co. v. Dean, 132 Tex. 320, 122 S.W.2d 1053. These authorities are also adverse to appellee's evidence that he did not know he had to file a claim with the Industrial Accident Board as provided by Art. 8307, Sec. 4a, supra.

We do not understand that appellee says he believed that the insurance payments received by him from Metropolitan were paid as workmen's compensation for an on-the-job injury. His testimony disputes this theory, but at any rate when such payments ceased he made no inquiry about compensation for a year or more during all of which time he was suffering pain. Such action we think cannot be reasonable prudence under the circumstances.

Giving full faith to appellee's statement that he relied on the statement or advice of Mr. Menke he is confronted with the fact that the statement was made shortly after

the accident, he thereafter received payments from Metropolitan for some eight weeks and then went to work on limited duty during all of which time he was conscious of his injury by reason of pain yet he made no effort to file his claim until told by the union president that it was necessary to do so. He (appellee) was presumed to know the law and by merely relying on the statement or advice of Mr. Menke he has not met the test of good cause. Consolidated Casualty Ins. Co. v. Perkins, 154 Tex. 424, 279 S.W.2d 299. Texas Indemnity Ins. Co. v. Cook, supra. Young v. Safety Casualty Co., Tex.Civ.App., 168 S.W.2d 884. Er. ref.

 Under the record before us the question of the existence of continuous good cause up to the time of the filing of appellee's claim is one of law and under the record we are compelled to hold adversely to his contention.

It appears the question has been fully developed, the judgment of the trial court is reversed and judgment is here rendered that appellee take nothing.

Reversed and rendered.