**UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant,**

v.

**Barbara H. HERZIK, a widow, Appellee.**

No. 13962.

Court of Civil Appeals of Texas.

Houston.

June 14, 1962.

Rehearing Denied Sept. 13, 1962.

James G. Sargent, Houston, for appellant.

Russell T. Van Keuren, Houston, for appellee.

COLEMAN, Justice.

This is a suit for death benefits under the Texas Workmen's Compensation Act. Based on a jury verdict the trial court entered a judgment for the plaintiff.

Barbara H. Herzik was the wife of Frank J. Herzik, who died October 16, 1959, while engaged in the performance of his duties as an oven loader for Schott's Bakery, Inc. Appellee's claim for compensation was filed with the Industrial Accident Board July 30, 1960. The jury found that appellee was physically incapacitated to file a claim for compensation from October 16, 1959, through April, 1960, a period of 6½ months,

and that good cause existed for not filing the claim sooner than it was filed.

■ The jury finding of "good cause" was based on findings that appellee believed that Schott's Bakery, Inc. would take care of all her insurance claims and that she did not know she was required to file a claim within six months from the date of her husband's death. The second basis is untenable. Mistake of law or ignorance of the law will not justify delay in filing a claim for compensation beyond the six month period provided in the Workmen's Compensation Act. LaCour v. Continental Casualty Co., 163 S.W.2d 676, Tex.Civ.App., error ref.; Sandage v. Traders & General Ins. Co., 140 S.W.2d 871, Tex.Civ.App., error ref.; Texas Employers Insurance Ass'n v. Doss, 301 S.W.2d 473, Tex.Civ. App., error ref., n. r. e.; Petroleum Casualty Co. v. Dean, 132 Tex. 320, 122 S.W.2d 1053. There was no issue submitted to the jury, and no finding, that appellee's ignorance of the fact that her deceased husband's employer carried Workmen's Compensation insurance constituted a good cause for failure to file her claim.

The evidence on which the jury found that Schott's Bakery, Inc. would take care of all of appellee's insurance claims consisted of the testimony of appellee that she received a telephone call from someone "high-up" in the company, Mr. Jack Freeborn, who called her about the insurance. He told her he was sorry about Mr. Herzik and that he had a check for her. He then asked if she wished to come and get it. When she told him that she wasn't able to come and get it by herself, he said, "I will send it out. I will take care of everything." She testified that she guessed the check was for life insurance that her husband had paid for and that she didn't know whether it had anything to do with Workmen's Compensation insurance. She never did see or hear from Mr. Freeborn after she got the check. Mrs. Herzik had very little education or business experience of any kind. She testified that prior to the time she consulted her lawyer in July, 1960, she had never heard of the Workmen's Compensation Law and knew nothing about its requirements. In answer to a question by appellant's attorney she said that all of her conversation with Mr. Freeborn was about the life insurance check. She further testified on cross-examination that she didn't know there was a Workmen's Compensation Law, or that Schott's Bakery had Workmen's Compensation insurance, or that she had to file a claim in six months and that she could have picked up the telephone and called her lawyer to ask about Workmen's Compensation and that the reason she didn't do it was because she didn't know anything about Workmen's Compensation. On redirect examination she stated that she relied on Mr. Freeborn's statement that he would take care of everything concerning the insurance. She then testified again that the only reason the claim wasn't filed at a proper time was that she didn't know what the law was. She further testified that no one representing appellant or Schott's Bakery, Inc., told her that they would handle her claim for her.

■ The general rule applicable to the facts of this case is concisely stated in LaCour v. Continental Casualty Co., supra, as follows:

"It has been uniformly held that the test for 'good cause' for delay in filing a claim before the Board is that of ordinary prudence, that is, whether the injured employee has prosecuted his claim for compensation with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances and that the question as to whether he has exercised such degree of diligence is ordinarily a question of fact, but that, where the evidence, taken most strongly in favor of the claimant, admits of but one reasonable conclusion, negativing good cause, the question becomes one of law. Texas Indemnity Ins. Co. v. Cook, Tex.Civ.App., 87 S.W.2d 830,

writ refused; Maryland Casualty Co. v. Merchant, Tex.Civ.App., 81 S.W.2d 794."

■ Appellee has frankly stated that she did not know that the employer had Workmen's Compensation insurance. She knew nothing about the law concerning injuries received in the course of employment. She testified positively several different times that her ignorance of the law and of the fact that the company had procured Workmen's Compensation insurance were the only reasons she did not file her claim. She also testified that she relied on the statement made by Freeborn that he would take care of everything. The jury reasonably could have believed that had she not relied on this statement she would have caused an investigation to be made which would have resulted in knowledge of the fact that the company had provided Workmen's Compensation insurance for the benefit of its employees and that her claim must be filed within six months. The fact that the company did voluntarily "take care of everything" in relation to the life policy would be a circumstance to be considered by the jury. Appellee's physical and mental condition at the time the statement was made, as well as her lack of education and business experience, might properly be considered by the jury in determining whether an ordinary prudent man under the same or similar circumstances would have delayed in filing the claim as long as she did. We cannot say that the evidence taken most strongly in favor of the claimant admits of but one reasonable conclusion, negativing good cause.

■ An employer is not required by law to become a subscriber under the Workmen's Compensation Act. While the Act provides for constructive notice to employees of an employer's election to accept the terms of the Act, it has been held that this provision does not apply to beneficiaries of deceased employees. Texas Employers' Ins. Ass'n v. McGrady, 296 S.W. 920, Tex. Civ.App., writ dism.; Employers' Liability Assur. Corporation v. Mills, 81 S.W.2d 1028, Tex.Civ.App., writ dism.; Hurd v. Republic Underwriters, 105 S.W.2d 428, Tex.Civ.App., writ dism.

■ After a careful review of all the testimony pertinent to the issues submitted on "good cause," we are unable to say that the answers made by the jury are so contrary to the great weight and preponderance of the testimony as to be clearly wrong. Appellant also contends that appellee's testimony concerning the only reasons she failed to file her claim for compensation constitute judicial admission. However we think these statements were modified by her further testimony that she relied on the company to take care of everything pertaining to insurance because of the statement to that effect made by Mr. Freeborn.

The deceased employee, Mr. Herzik, had been working as an oven loader for about three years. An oven loader lifts four loaves of bread from a rack, which extends from a few inches above the floor to a height of some six feet, and places them on a plate which is mechanically inserted into the oven. The oven accepts sixty or sixty two loaves a minute. The work requires bending, lifting, reaching and turning. On the day in question deceased and his partner had loaded between 700 and 900 loaves of bread in the fifteen minutes since they had begun work. While the testimony shows that the work is not particularly strenuous, the testimony is that two men work together and load about sixty loaves a minute. On the day in question the deceased had been working steadily for fifteen minutes before he collapsed. During that time he would have transferred bread from the rack to the baking plate about one hundred times.

Prior to his collapse on the day in question he had become ill and on September 8, 1959, consulted a physician. A physical examination revealed that he was suffering from "heart failure from coronary disease, coronary insufficiency, and high blood pres-

sure and general arteriosclerosis" and had a greatly enlarged heart. After a period of treatment and bed rest, on October 4, 1959 he returned to work on a half-shift basis and had been working at his usual job for several days before his collapse and death. The medical testimony shows that his death was caused by a coronary occlusion. Mr. Herzik had developed arteriosclerosis, narrowing and hardening of the arteries. The narrowing of the interior of the artery, or lumen, causes the blood to flow slower than normal, and increases the strain on the heart. If the movement of the blood slows sufficiently, it may clot, stopping the flow of blood and causing death. The doctor who treated Mr. Herzik testified that an extra demand thrown on the arteries increases the danger of a clot forming in the artery, and that the exertion of loading bread on the occasion in question contributed to his death. He further testified that it was as probable that a strain sufficient to cause a clot would result from the exertion of beginning work from rest before he was adjusted as after he had become physically exhausted by work. While the doctor testified that any exertion such as lifting or bending might eventually cause the death of a person with Mr. Herzik's condition of health, and that he thought his physical condition was such as to eventually cause his death had he not resumed work, he positively testified that it was his opinion that the work Mr. Herzik was doing just prior to his collapse was a contributing cause of his death. No medical testimony to the contrary was offered.

In Aetna Insurance Company v. Hart, Tex.Civ.App., 315 S.W.2d 169, writ ref., n. r. e., this Court said:

"To recover under the Act it need only be shown that an injury to the physical structure of the body was sustained by the employee as a result of a risk or hazard of the employment while the employee was acting in the course of his employment."

In Maryland Casualty Company v. Rogers, Tex.Civ.App., 86 S.W.2d 867, writ ref., the court held:

"'By the term "injury" is meant, not only an injury the means or cause of which is an accident, but also an injury which is itself an accident.' Carroll v. Industrial Commission, 69 Colo. 473, 195 P. 1097, 1098, 19 A.L.R. 107.

\* \* \* \* \* \*

"\* \* \* The injury was unexpected and undesigned. It could be traced to a definite time, place, and cause."

In Traders & General Ins. Co. v. Rooth, 268 S.W.2d 539, Tex.Civ.App., writ ref., n. r. e, the court held:

"Compensation benefits can be awarded if the workman, as a result of job exertion, sustains hemorrhages, ruptures or heart attacks, notwithstanding the fact that predisposing factors contribute to the incapacity or death.

\* \* \* \* \* \*

"A workman can recover compensation benefits if a job incident *contributes* to cause his incapacity. Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026; Travelers' Ins. Co. v. Peters, Tex.Civ.App., 3 S.W.2d 568—affirmed Tex.Com.App., 17 S.W. 2d 457. In other words, a predisposing bodily infirmity will not preclude or reduce compensation benefits if the ultimate incapacity is contributorily caused by an accident arising out of the employment."

In Texas Employers' Ins. Ass'n v. McGrady, Tex.Civ.App., 296 S.W. 920, writ dism., the court said:

"However, the mere fact that the person in whom the rupture occurred has at the time diseased arteries or high blood pressure is not conclusive proof that the injury is a result of a disease and not accidental. The weakened

state of the arteries caused by the physical disorder, or the abnormal strain caused by the high blood pressure, is merely a condition which some exciting or producing cause may operate. If a rupture results from lifting a heavy weight by a healthy person, it is because the exertion is too great for one in that physical condition. The legal principle is the same if the rupture results from lifting a lighter weight by a person of less strength, whether the reduced strength is the result of natural or diseased conditions. Whatever the physical condition of the individual may be, if it is such that it requires some physical exertion or strain to cause the rupture the injury may properly be classed as an accidental one. If lifting 100 pounds may cause an accidental injury to one person, upon what ground can it be said that a similar injury to another person caused by lifting 50 pounds, or 25 pounds, is not also accidental? If that is not true, then where shall we draw the line between the differing physical conditions; or what shall we adopt as a standard of weight in determining whether the injury is the result of an accident or a disease? It would not be satisfactory or logical to fix that standard at what it would require to injure one in normal health, for even people in normal health vary in physical strength. Nor should it be said that an injury from overexertion by one in a debilitated condition is not an accident simply because it required less violent exercise to produce the injury. Since we cannot fix any standard of condition, neither can we fix any standard of sufficiency of cause operating upon the condition. The legal principle is the same, whether the injury results from lifting weights, as a can of paint, or by some other form of physical overexertion."

The evidence supports the findings of the jury that Mr. Herzik's death resulted from an accidental personal injury sustained in the course of his employment, and that the answers of the jury to the special issues submitted were not so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

The judgment of the trial court is affirmed.