**TEXAS CASUALTY INSURANCE COMPANY, Appellant,**

**v.**

**Miles Clifford BEASLEY, Appellee.**

**No. 11212.**

Court of Civil Appeals of Texas.

Austin.

July 8, 1964.

Gay & Meyers, Austin, for appellant.

Thos. C. Ferguson, Johnson City, for appellee.

HUGHES, Justice.

This is a workmen's compensation case in which the jury found that appellee, Miles Clifford Beasley, was totally and permanently disabled and that he had good cause for not filing his claim with the Industrial Accident Board within the six month period prescribed by Art. 8307, Sec. 4a, Vernon's Ann.Tex.Civ.St. On these and other appropriate findings, judgment was rendered against appellant, Texas Casualty Insurance Company, the insurance carrier for Premier Granite Quarries, the employer of appellee, for 401 weeks at $35.00 per week, with certain adjustments for compensation paid and accumulated.

Appellant's first two points are that there was no evidence that appellee had good cause for his failure to file his claim for compensation with the Board within six months of the date of his injury which continued to exist until his claim was filed and that the Court erred in submitting this issue to the jury and that the findings of the jury to such issue was so against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

Appellant also preserved his no evidence point by filing a motion for instructed verdict and a motion for judgment despite the verdict.

Issue No. 18, which finds good cause existed is preceded by and dependent upon an affirmative answer to an issue inquiring whether or not appellee, "believed the operation performed upon him in May, 1961, would so repair the personal injuries sustained by him, if any, April 11, 1961, that he would not sustain any serious disability after he recovered from the operation."

This issue was answered "yes," and it constitutes the sole ground for "good cause" relied upon by appellee.

Appellee injured his back on April 11, 1961, while working in the course of his employment for Premier Granite Quarries. His claim for compensation was filed with the Board about November 13, 1962.

Appellee was injured while assisting in the installation of an electric motor. He felt, what he called, "a catch in my back." He continued to work the remainder of the day. A weekend intervened and he went to see his personal physician, Dr. Henry Hoerster, about three days after the accident. Dr. Hoerster was not told about the accident. He prescribed some medicine for pain in the legs, which was the complaint appellee made. Two or three days later appellee told Dr. Hoerster about the accident and "he said it might be a slipped disc," and advised appellee to see the insurance company doctor, Dr. Garland L. Dansby.

Dr. Dansby x-rayed appellee a few days following the reference by Dr. Hoerster and advised appellee to go to San Antonio and see Dr. Ralph Munslow. Appellee visited Dr. Munslow who sent him back to the hospital at Llano for Dr. Dansby to put him in traction. This was done but no relief from pain resulted. Dr. Dansby then advised appellee to undergo an operation. This operation was performed May 8th at Llano by Dr. Ralph Munslow with Dr.

Dansby and Dr. Henry Hoerster assisting. Six days after the operation appellee went to his home in Llano. After six weeks during which time appellee saw Dr. Dansby several times, he returned to his normal work at the Quarry. After working fifteen minutes appellee's back hurt so much he went home. Appellee was treated further by Dr. Dansby and after two weeks he returned to work at the Quarry. He suffered pain and was not able to do quite as much work as he previously did. He wore a brace which was fitted by Dr. Munslow in San Antonio. On February 10, 1962, appellee quit work at the Quarry and went to work five days later for Judge A. W. Moursund on a ranch.

Appellee continued to see doctors after he returned to work at the Quarry the second time until he quit in February.

We quote appellee's testimony:

"Q Now, after the operation was performed, what did you expect as a result of it?

A Well, they told me when I was operated on, before I was operated on, that I would be as good as new.

Q Did you believe that operation would repair the damage and you would be as good as new?

A Yes, sir.

Q And did you continue to believe that throughout the time you worked for Premier Granite?

A Yes, sir.

Q In fact, when did you, if you ever did, change your mind any about that particular thing?

A After I had to go back to the hospital in July."

Confirmation of the opinion of the doctors treating appellee that his recovery would be complete is found in the following testimony of Dr. Dansby:

"Q From your contact with Mr. Beasley following the operation up until January 1962, did you feel that the operation had restored him, or that there was still some disability existing?

A He still had the complaint in his back.

Q Yes, sir.

A Dr. Munslow was very enthusiastic about the operation, in that he felt since it had been demonstrated on X-ray and he had found the defect and had corrected it, the chances of him getting a complete recovery were real good—better than an individual who you operate on and you don't find enough to quite account for the severity of their symptoms.

Q Yes, sir.

A You might sew that individual up and not get as good result as you would if you found a large defect.

Q Yes, sir.

A And he thought that it was—that he should get a good cure. I, of course, corresponded back and forth with him after he didn't get well, and even sent Mr. Beasley back down to him.

Q Yes, sir.

A And he thought it was just a matter of time.

Q Before he would get well?

A Before he would eventually get well."

In July 1962, while appellee was working for Judge Moursund and was hauling water, he hurt his back and went to the Llano hospital for treatment. At this time appellee began to have doubts about his complete recovery. He testified:

"Q At any rate, before you went to the hospital, [in July] why had you not filed a claim with the Industrial Accident Board up to that time?

A  Well, I kept thinking I would finally get all right.

Q  Did you want to assert a claim if you were going to get all right?

A  Sir?

Q  I said did you want to assert a claim if you were going to be all right?

A  No, sir.

Q  And in July, after you had been to the hospital, did you have some misgiving about that—you indicated awhile ago that you did—some misgiving about whether you were going to get all right or not?

A  Yes.

Q  Then did you talk to Judge Moursund?

A  Yes, sir."

On cross examination appellee testified that in July he had reached the conclusion that he was "not going to ever get as good as new" and that it would be necessary for him to file a claim with the Board.

Judge Moursund, an attorney, for whom appellee was working in July 1962, testified that appellee talked with him about his claim in "the early summer or summer" of 1962. He wrote appellant about then and received this reply, dated July 8, 1962:

"Mr. A. W. Moursund
Attorney at Law
P. O. Box 125
Johnson City, Texas

          Re: Claim No. TWC–4636
          Clifford Beasley vs.
          Premier Granite Quarries
Dear Mr. Moursund:

Your letter of June 20 addressed to the Premier Granite Quarries has been referred to this office.

We note you have asked that the Premier Granite Quarries have this

Company contact you with reference to a settlement of the claim of Mr. Clifford Beasley. If you have any kind of a compromise offer that you would care to submit, we would be pleased to receive it.

          Yours Very Truly,

     (Signed) G. C. Boddeker
              Claims Manager"

Judge Moursund also testified that he talked "compromise" with Mr. Boddeker subsequently but no agreement was reached. These negotiations extended until about the middle of August.

Judge Moursund, while not actually employed by appellee as an attorney, was acting in a friendly capacity as an attorney until the latter part of August when appellee was referred to Judge Tom Ferguson, appellee's present attorney. Judge Moursund explained his action as follows:

"A  Well, I was talking to these folks on the phone, and after that Clifford went into the hospital and I have Workmens' Compensation on all my people, it's something that they need and they ought to have, and so we also have a rule that in my organization, that any time anybody gets hurt, anybody gets in the hospital, that I am supposed to be notified and the insurance company is supposed to be notified, so my insurance carrier, I believe is Hartford Accident and Damage Company, was notified; they sent out an investigator and he reported back to me that the other insurance company that covered Clifford's accident injury was claiming that he was hurt working for me, and so when I found that out definitely, I believe it must have been the last of August, and, of course, when I knew there was something like that brewing, I felt like I ought to disqualify myself and I sent him to see you."

Judge Ferguson testified to his employment by appellee and his activities in his behalf as follows:

"Clifford Beasley came to me sometime prior to November 7, and discussed with me a claim which he had against the Texas Casualty Insurance Company for Workmens' Compensation Insurance, on a representation that he had been referred to me by Judge Moursund. I then began a course of investigation and discussion with Mr. Beasley. I had not been in the practice of law again very long. I did not have any forms for a claim, I had to secure the forms. I made out the forms and brought them to Llano. Mr. Beasley and I went over them and we found that there was a correction as to date of injury, and we had to check that, and as rapidly as I could assemble the information that I thought was necessary upon which to predicate the claim, I did so, and as soon as I had it assembled I filed the claim—or Mr. Beasley signed it, I think on November 7, but I had to hold it for a short period of time until I got some additional information. It was then filed, but it was filed as quickly as I could get all the information and prepare it after he came to me. . . .

Q How long after Mr. Beasley's first visit to you, when he employed you as his attorney, was it before you actually got the claim filed?

A I couldn't tell you. I know I probably took a little bit more time than I normally would because I assumed this question was going to arise, and I was trying to find the basis that he had for delay, and I perhaps took more time with it than I would have an ordinary claim. But I am not sure just how long it was. I had to make two trips—I think two trips—to Llano.

Q Yes, sir.

A As well as I made a trip to Austin to get the forms.

Q Well, do you suppose that it was as long as a week or two weeks?

A Well, I'm sure it was longer than that, Mr. Gay.

Q What would be your best idea about it?

A My best idea would have been about six weeks probably, but I'm not entirely sure of that."

Judge Ferguson testified that he was employed by appellee about or perhaps a few days before or after the first of October.

Appellee was paid compensation by appellant for 12 weeks at the rate of $35.00 per week. The dates of these payments are not shown but they were made "from and after" the injury in April, 1961.

Dr. Dansby, appellant's doctor, treated appellee as late as January 18, 1962, and his services were paid for by appellee.

Appellee did not pay for his operation. Appellant permitted appellee to charge medicine to it at the Corner Drug Store in Llano. This credit was cut off "before July 1962."

This case has unusual and compelling moral force to sustain a finding of "good cause" for failure of appellee to file his claim for compensation within the six months' period. Appellee, his doctors, including appellant's doctor, and appellant knew that appellee's injuries were not trivial. Appellee submitted to radical surgery in order to regain his health. He thought he would completely recover. This belief was shared by the doctor who performed the surgery upon him. Appellee did not wish to file a claim for compensation as long as he believed recovery possible.

An employe could not have a more commendable motive for failure to file a claim. Appellee was 44 years of age at the time of his injury. Recovery, not compensation, was uppermost in his mind, evidenced not only by his words but by his actions, courageous actions.

■ We are of the opinion that appellee's belief, a reasonable good faith belief, in his ultimate recovery, under the circumstances of this case, made the existence of "good cause" an issue of fact for the jury, at least until appellee's belief in his full recovery was abandoned.

As the record shows, appellee began to lose hope for full recovery in July 1962, when his back became acutely painful. He then sought advice from Judge Moursund who immediately took his claim up with appellant and compromise was discussed and under consideration until Judge Moursund was advised that his own insurer might become involved and he withdrew as counsel for appellee and recommended Judge Ferguson. We will not repeat the testimony of Judge Ferguson which has been fully stated above. It is our opinion that it was sufficient to support a jury finding that the good cause found by the jury continued to exist until the claim was actually filed. We do not mean that appellee believed he would recover until the day the claim was filed. We do mean that from the time this belief was discarded appellee and his attorneys acted with proper and professional prudence and dispatch in investigating, attempting to settle, and in filing his claim.

■ Many cases have been cited by the parties. None is factually in point. A discussion of them would not be fruitful. What is "good cause" is primarily a question of fact. It becomes a question of law only when "the evidence, construed most favorably for the claimant, admits of no other reasonable conclusion." Hawkins v. Safety Casualty Company, 146 Tex. 381, 207 S.W.2d 370. Here, while the facts may be novel, we hold that the question of whether or not they constituted "good cause" was for the jury.

We also hold that the jury finding of "good cause" was not so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust or clearly wrong.

Appellant's third point is that the Court erred in submitting Issue No. 17, previously referred to, which reads:

"Do you find from a preponderance of the evidence that the Cross-Plaintiff Miles Clifford Beasley believed that the operation performed upon him in May, 1961, would so repair the personal injuries sustained by him, if any, on April 11, 1961, that he would not sustain any serious disability after he recovered from the operation?

Answer 'Yes' or 'No.'

We, the Jury, answer yes"

Appellant objected to this issue on the ground that it did not require the jury to find that appellee continued to believe that he would recover up until his claim was filed. It is undisputed that appellee did not entertain this belief up until the very moment his claim was filed. To have so submitted this issue would have been to instruct a verdict against appellee.

■ In the disposition of this point we adhere to the rule announced by Justice Gray for this Court in Texas Employers' Ins. Ass'n v. McDonald, 238 S.W.2d 817, writ ref., as follows:

"It is true that the good cause which will excuse the failure to file a claim for compensation within six months after the injury must continue until the claim is actually filed with the Board. Petroleum Casualty Co. v. Dean, 132 Tex. 320, 122 S.W.2d 1053. It is also true that reasonable delays, both prior and subsequent to knowledge of the facts relative to the claim,

are to be considered in determining good cause, and this includes a reasonable time for investigation, preparation, and the filing of the claim. Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370."

See Texas Employers' Ins. Association v. Cummings, 364 S.W.2d 255, Waco Civil App., writ ref., n. r. e.

■ We also hold that appellant has not preserved its objection to the charge, in this respect, in conformity with the requirements of Rule 272, Texas Rules of Civil Procedure. This rule requires, in part, that if the Court overrules an objection to the charge, which must be in writing, that "he shall endorse his ruling thereon and sign the same officially." This was not done here. Appearing on appellant's objections to the charge and at the end are the words "All above, by the Court overruled." The record does not disclose by whom this notation was made. It bears no signature. It is insufficient to constitute a bill of exception under Rule 272.

We have previously set forth the facts upon which we have concluded that the finding of "good cause" should be sustained. It is our opinion that under these facts and the law as stated by Justice Gray, the objection of appellant to this issue was not a valid objection. Point three is overruled.

■ Appellant's points four and five are that there was no evidence that appellee's total disability was permanent and that the jury finding that it was permanent is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

The evidence shows that appellee worked for the Quarry from about nine weeks after his operation until February 10, 1962, and that since February 15, 1962 he has been working as a ranch hand for $200.00 per month plus lodging, utilities and beef.

Appellee's average daily wage during the year preceding his injury was $16.50, for the days he worked.

Appellee testified that while he was able to do some kinds of work he was not able to do the type of work he had done before his injury. Dr. Henry Hoerster who last saw appellee on or about December 3, 1962, said he then had about 20% overall disability, but that barring any further surgery appellee would remain pretty much as he was, including a permanent sensory disturbance in left leg. Dr. Henry Hoerster also said appellee could not be blamed for not wanting any further surgery.

Dr. Dan Hoerster, partner of Dr. Henry Hoerster in the Hoerster Clinic in Llano, first saw appellee as a patient in March, 1963, and testified fully as to his condition. He referred appellee to Dr. Farris in Austin. He testified that appellee was not able to do the ordinary task of a working man in industrial employment when he saw him in March, 1963. He did not believe it possible to say whether another operation would be beneficial. He further testified appellee's disability would become worse with time. That when he saw him he believed he had more than twenty per cent disability. He testified it was his opinion that appellee would be disabled from performing the usual tasks of a working man in industrial employment.

Appellee quit working at the Quarry because he was advised by his doctor to seek lighter work and at a place where he would not have to stand on concrete floors as he did when working for Quarry.

The ranch work appellee did required longer hours than he worked at Quarry but the work was lighter and of a different character.

■ Medical testimony as to incapacity is not required and if presented is not conclusive to establish the extent and duration of incapacity sustained. This may be prov-

ed by circumstantial evidence and contrary medical testimony may be disregarded. Travelers Insurance Company v. Arnold, 378 S.W.2d 78, Dallas Civ.App.

■ Neither is the fact that appellee is working and earning money conclusive on the nature and duration of his incapacity. It is merely evidentiary. Trinity Universal Insurance Company v. Scott, 342 S.W.2d 348, Fort Worth Civ.App., writ ref., n. r. e. See Texas Employers Insurance Association v. Smith, 374 S.W.2d 287, Beaumont Civ.App., where a fact situation much more favorable to the insurer was held not to preclude a recovery for permanent total incapacity.

■ Total incapacity as that term is used in the Workmen's Compensation Statute does not imply absolute disability to perform any kind of labor. It does imply that a person is so incapacitated as to be disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment. Texas Emp. Ins. Association v. Mallard, 143 Tex. 77, 182 S.W.2d 1000. The jury in this case was so charged.

Appellant's points four and five are overruled.

The judgment of the Trial Court is affirmed.

Affirmed.