**MARYLAND CASUALTY COMPANY,**
Appellant,

v.

Ennis KEMP, Appellee.

No. 14326.

Court of Civil Appeals of Texas.

Houston.

Sept. 17, 1964.

Rehearing Denied Oct. 8, 1964.

Butler, Binion, Rice & Cook, James E. Crowther, Tom Martin Davis, Jr., Houston, for appellant.

Jim S. Phelps and W. W. Kilgarlin, Houston, for appellee.

WERLEIN, Justice.

This suit was brought by appellee, Ennis Kemp, to recover workmen's compensation benefits for an injury allegedly sustained by him while working for his employer, Southwest Steel Products Company. From the judgment of the court based on the jury finding of permanent partial incapacity, appellant appeals.

Appellant's first nine Points assert in essence that the jury's findings that good cause existed for appellee's failure to give timely notice of his injury; that appellee's belief that his injury was not incapacitating was good cause for not timely filing his claim for compensation; and that appellee had believed his injury had not been an incapacitating injury; are not supported by any evidence and are so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust.

Appellee testified in substance that he received his injury on or about March 20, 1961; that as a "tag man" is was his task to bind up and tag pieces of cut steel placed on a steel table; that in rushing around the table in order to get the overhead crane to pick up a bundle he had tied, he slipped on the wooden walk and fell against the table on his side, his back hitting the crossbars of the table; that his shoulder and back hit the table and he fell to the floor; that he felt his back pop, and after he got up, he felt pain in his back just below his belt line, but figured it was nothing too bad and that it would get all right and was nothing serious; that he continued to work although his back kind of hurt a little; and that he didn't tell the bosses about his fall because he didn't think it was serious enough, but the "boys" knew it.

He further testified that he continued to work until June, when he left the job because he had trouble with his stomach; that he then saw his family doctor, Dr. Bricker, and shortly after entered the hospital because of his stomach; that his back continued to bother and hurt him a little, but he thought it was going to get all right, and for that reason he didn't report it; that after seeing Dr. Thomas, to whom the case was referred, he was placed in the Community Hospital in Jacinto City in June for his stomach; that after he left the hospital and was going to Dr. Thomas for treatment of his stomach, his legs started bothering him; that when he told Dr. Thomas of a steady, dull aching running down both legs and his back hurting, Dr. Thomas told him that because his back was hurting it could cause his legs to hurt and that it could also come from arthritis; that Dr. Thomas put him back in the hospital in October, and had another doctor run on him what he thought was a discogram; that that's when he knew that what happened to his back was serious; that that's when he thought about filing a claim and consulting a lawyer; and that he didn't go right to a lawyer when he got out of the hospital but stayed at home for a few days and then, after talking to some friends, employed a lawyer.

The evidence shows that in reports to appellee's employer, made in August, September and October, Dr. Thomas repeatedly advised that his diagnosis of appellee's condition was arthritis in both knee joints and labyrinthitis. It was not until the report of October 30, 1961 that the diagnosis was changed to "ruptured disc L. 4." It is true, as asserted by appellant, that appellee testified that after his stomach got all right sometime in July or August, the only thing that kept him from working was his legs and back. He was asked:

"Q And this is what you knew was due to the fall on March 20, 1961, is that right?

"A  That is the onliest thing because I knew it hurt me then. That's the only thing I refer back to during that time because I knew it hurt me at that time."

This testimony could be construed as meaning that appellee at the time of the trial referred back to his fall. Appellee also testified that he was told by Dr. Thomas that his condition could come from arthritis. Dr. Thomas testified that he felt he was "dealing with an arthritic problem" even after appellee complained of lower lumbar pain on July 26, 1961. It is clear that Dr. Thomas continued to diagnose the case as an arthritic problem until the discogram was made the latter part of October, 1961. From this, we think it may be inferred that appellee was told by the doctor and knew he was being treated for arthritis until the latter part of October, 1961, when the discogram was made. Then it was that appellee for the first time realized that his condition was serious and the result of his injury and that it was not merely an arthritic condition.

The following testimony given by appellee further explains why he did not give notice of his injury and file a claim before November 8, 1961:

"Q  Well, you don't consider back pain and leg pain severe enough to keep you from working in August is a little thing, do you?

"A  Sir?

"Q  You didn't think that was a little thing when it was enough to keep you from working?

"A  I didn't think it then—I didn't know what was the matter then, you see. There is a lot of times that you have pain that you can go along with for a long time and not think that they are as bad as they are until you find out—until you go to the doctor and then he tells you they are that bad. Then

it looks like—I imagine they hurt worser then than ever because you know what is the matter with you. That's the way that happened to me, I just didn't think anything about it. It didn't really mean much until after I had this doctor to take the discogram."

Appellant strenuously contends that appellee has not shown good cause for failing to give notice and to file his claim within the statutory period which expired on or about September 20, 1961. The rule with respect to the matter of good cause is stated in the case of Hawkins v. Safety Casualty Co., 1948, 146 Tex. 381, 207 S.W. 2d 370:

"The term 'good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. Consequently, whether he has used the degree of diligence required is ordinarily a question of fact to be determined by the jury or the trier of facts. It may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion. Martin v. Travelers Ins. Co., Tex.Civ.App., 196 S.W.2d 544; Great American Indem. Co. v. Beaupre, Tex.Civ.App., 191 S.W.2d 883; LaCour v. Continental Casualty Co., Tex.Civ. App., 163 S.W.2d 676; Texas Indemnity Ins. Co. v. Cook, Tex.Civ.App., 87 S.W.2d 830, writ refused.

"The law is well settled that a bona fide belief of a claimant that his injuries are not serious but trivial is sufficient to constitute good cause for delay in filing a claim. It also has been held a number of times that the advise of a

physician, upon whom a claimant relies, that injuries are not of a serious nature, but are temporary or trivial, is sufficient to justify a claimant's delay until he learns, or by the use of reasonable diligence should have learned, that his injuries are serious." [citing numerous Texas cases]

Although Dr. Thomas testified that as early as July he felt appellee possibly had a disc when appellee began to complain of lower lumbar pain, and that "I began to say right there that this was a possibility," there is nothing in the record to show that Dr. Thomas so informed appellee or that appellee had any knowledge of the possibility of a disc until after the discogram was made. His back hurt a little from the time of the fall but what little recurrent pain he had was apparently not severe enough to cause him to realize that such condition was anything more than temporary and trivial, especially in view of his doctor's incorrect diagnosis and reports. Texas Employers Insurance Ass'n v. Brown, Tex. Civ.App., 309 S.W.2d 295, writ ref., n. r. e.

In determining whether or not appellee used the degree of diligence that an ordinarily prudent person would have used under the same or similar circumstances, it is of course necessary to consider the attendant circumstances. In this case we have a man who was laid up for some weeks with a sprained back in 1957. He made a good recovery and continued to work for years for the same employer. On March 20, 1961, while engaged in work he fell, striking his shoulder and back against a part of a table. He had had other falls with no bad results. In June, 1961, he had to quit work because of stomach trouble. He was treated for stomach trouble and received group insurance payments as a result of the incapacity resulting from his stomach condition. His fall on March 20, 1961 gave him a little back pain but not enough to interfere with his work. He considered it of no importance and a mere trivial condition which was not serious and would get well. There is no

evidence that he hurt his legs in the fall, and yet after his stomach trouble subsided it was his legs that first gave him trouble. At the trial he testified that his legs and his back incapacitated him. His condition had been diagnosed as arthritis in both knees. On July 26, 1961, when he first complained to Dr. Thomas of his lower back as well as well as his legs, he was informed it could be arthritis. It was not until after his second confinement in the hospital and after a discogram had been taken late in October, that his doctor changed his diagnosis to a ruptured disc and so informed appellee. It was a mere matter of a few days after this when appellee employed a lawyer and filed his claim.

■■ Under all the facts and circumstances of this case, we cannot hold as a matter of law that appellee did not prosecute his claim with the degree of diligence that an ordinarily prudent person would have exercised under the same or similar conditions. It is true that there are some controverting facts. It is our duty, however, to consider the evidence and the inferences properly to be drawn therefrom in the light most favorable to the verdict and judgment of the court, and to accept as true that testimony which tends to support the verdict. 4 Tex.Jur.2d, p. 326, § 804, and cases cited. An issue of fact is raised "if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff." Wininger v. Ft. Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150.

■ We have examined the cases cited by appellant and find that they are factually distinguishable from the instant case. Furthermore, we have carefully examined the entire record and have concluded that we cannot say that any of the jury's findings with respect to notice and claim, good cause, and appellee's belief that his injury was not incapacitating, are so against the

great weight and preponderance of the evidence as to be clearly wrong and unjust.

 We have also concluded from a careful reading of the statement of facts that there is ample evidence to support the jury's finding that appellee sustained permanent partial incapacity due to his accidental injury of March 20, 1961, and that his injury was sustained while in the course of his employment by Southwest Steel Products Company. Considering all of the evidence, we cannot say that the findings of the jury to such effect are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In re King's Estate, 1951, 150 Tex. 662, 244 S.W.2d 660.