**Affirmed in Part, Reversed in Part, Remanded, and Majority and Concurring and Dissenting Opinions filed August 30, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00295-CV

---

**ZURICH AMERICAN INSURANCE CO., Appellant/Cross-Appellee**

**V.**

**MARTA DIAZ, Appellee/Cross-Appellant**

**V.**

**TEXAS DEPARTMENT OF INSURANCE – DIVISION OF WORKERS' COMPENSATION AND COMMISSIONER RYAN BRANNAN, IN HIS OFFICIAL CAPACITY, Cross-Appellees**

---

**On Appeal from the 201st District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-13-001043**

---

## C O N C U R R I N G   A N D   D I S S E N T I N G   O P I N I O N

I agree we should affirm that portion of the trial court's judgment dismissing on jurisdictional grounds Marta's claims for declaratory judgment. I therefore join

the majority opinion as to the jurisdictional issues.

I also join section III.B. of the majority opinion, which concludes that the trial court correctly denied Marta's motion for summary judgment on her tolling argument.

I concur in part and dissent in part from section III.C. of the majority opinion. I concur with the majority that Zurich did not waive its reliance on section 409.007's one-year bar for the reasons Marta asserts. I also concur with the majority that the trial court erred in granting summary judgment for Marta on the good cause issue because she failed to conclusively establish good cause for failing to file her death benefits claim on or before the one year anniversary of Encarncion's death. However, I disagree with the majority that Zurich is not entitled to summary judgment on good cause. In my view, Zurich either proved its entitlement to judgment as a matter of law or Marta did not raise a genuine issue of material fact.

Accordingly,

● I would affirm the judgment for Zurich on the tolling issue.[1] It is unclear whether the majority opinion is intended to permit the parties to revisit Marta's tolling issue on remand, but to the extent it does, I respectfully dissent.

● I agree the trial court erroneously granted Marta's summary judgment motion on grounds that Zurich waived section 409.007's one-year bar. Marta did not establish her counter affirmative defense that Zurich failed to timely assert

---

[1] The trial court signed a judgment in Zurich's favor on the tolling issue even though Zurich did not move for summary judgment on that issue; it opposed Marta's summary judgment motion. However, Marta does not complain that the final judgment grants relief not requested by Zurich. Thus, affirmance is appropriate given this court's holding that Marta's time period to file her claim was not tolled. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011) (per curiam) (when trial court grants more relief than requested, court of appeals "should treat such a summary judgment as any other final judgment, considering all matters raised and reversing only those portions of the judgment based on harmful error") (citations omitted).

2

section 409.007. Zurich is entitled to judgment on that issue. *See, e.g.*, *Garza v. Williams Bros. Constr. Co.*, 879 S.W.2d 290, 294-95 (Tex. App.—Houston [14th Dist.] 1994, no writ). However, I write separately to expand upon the majority's analysis of this issue.

● I agree the trial court erroneously granted Marta's summary judgment motion on good cause. However, because Zurich filed a cross-motion for summary judgment on good cause, and because the evidence and Texas law compel a judgment in Zurich's favor on good cause, I would render judgment for Zurich. Because the majority does not do so, I respectfully dissent.

## A.    No Waiver of Section 409.007

A workers' compensation insurer must pay death benefits to an employee's legal beneficiary if a compensable injury to that employee results in death. *See* Tex. Lab. Code § 408.181(a). Texas Labor Code section 409.007 establishes a one-year time period within which a potential beneficiary must file a death benefits claim or else the beneficiary's claim is barred. *See* Tex. Lab. Code § 409.007(a); 28 Tex. Admin. Code § 122.100(a). The statute provides, in pertinent part:

> (a) A person must file a claim for death benefits with the division not later than the first anniversary of the date of the employee's death.
>
> (b) Failure to file in the time required by Subsection (a) bars the claim unless:
>
> > 1. the person is a minor or incompetent; or
> >
> > 2. good cause exists for the failure to file a claim under this section.

Tex. Lab. Code § 409.007. On its face, the statute burdens competent, adult beneficiaries with a duty to timely file death benefit claims within one year of an eligible employee's death. *See Tex. Mun. League Intergov'l Risk Pool v. Tex.*

3

*Workers' Comp. Comm'n*, 74 S.W.3d 377, 381 (Tex. 2002).[2]  A beneficiary's failure to do so bars the claim and relieves an insurance carrier of liability to the beneficiary unless the beneficiary is a minor or incompetent or good cause exists for the untimely filing.  *Id*.

Marta argued in her summary judgment motion that Zurich waived reliance on section 409.007 by not asserting it within sixty days of the notice of Encarnacion's death.  The trial court agreed and granted summary judgment for Marta on that issue.  I agree with the majority that the trial court erred in ruling that Zurich was required to assert section 409.007 within sixty days of the notice of death, but write separately to expand on the reasons why our holding is appropriate.

Marta bases her argument on Labor Code sections 409.021 and 409.022, as well as rule 132.17(b).  Section 409.021 provides in part that, if an insurance carrier does not contest the compensability of an injury on or before the sixtieth day after it is notified of the injury, it waives its right to contest compensability, absent evidence that could not reasonably have been discovered earlier.  Tex. Lab. Code § 409.021(c), (d).  Section 409.022 provides that the carrier's ground for refusal to pay benefits specified in the notice pursuant to section 409.021 constitutes the only basis for the carrier's defense on compensability, absent newly discovered evidence that could not have reasonably been discovered earlier.  *Id*. at § 409.022(a), (b).

---

[2] Rule 122.100 mirrors section 409.007 and provides, in pertinent part:

(a) In order for a legal beneficiary, other than the subsequent injury fund, to receive the benefits available as a consequence of the death of an employee which results from a compensable injury, a person shall file a written claim for compensation with the Division within one year after the date of the employee's death. . . .

(e) Failure to file a claim for death benefits within one year after the date of the employee's death shall bar the claim of a legal beneficiary, other than the subsequent injury fund, unless . . . good cause exists for the failure to file.

28 Tex. Admin. Code § 122.100.

My reading of the cited provisions in the context of the Act as a whole leads me to conclude, like the majority, that Zurich was not required to raise a section 409.007 defense within the sixty-day time period contemplated by section 409.021(c). First, whether section 409.021(c) applies to death claims under the present circumstances is unclear because that section's sixty-day period runs from the date the carrier is "notified of the *injury*." *Id*. at § 409.021(c) (emphasis added). A work-related injury may cause an employee's death after the sixty-day period expires. In any event, assuming it applies, the sixty-day deadline relates to compensability issues of which the carrier would reasonably be expected to discover by sixty days after being notified of the injury. This conclusion finds support in related administrative rules. For instance, the deadline is reiterated in rule 124.3(b), which generally requires a carrier to, upon receipt of a written notice of injury, investigate the compensability of the injury, the carrier's liability for the injury, and the accrual of benefits. 28 Tex. Admin. Code § 124.3(a). The issues of compensability or liability to which section 409.021(c) and rule 124.3 apply are those reasonably capable of determination within sixty days and, consequently, would generally focus upon whether the injury was work-related, an issue Zurich ultimately conceded. *See generally* Tex. Lab. Code §§ 409.021, 409.022 (discussing the procedures and deadlines an insurance carrier must follow to contest whether an injury is compensable); *id*. § 401.011(10) (defining "compensable injury" as "an injury that arises out of and in the course and scope of employment for which compensation is payable"); 28 Tex. Admin. Code § 132.17(b).

In contrast, generally a carrier would not have cause to raise a section 409.007 defense until, at the earliest, a potential beneficiary first filed a death benefits claim after the one-year period expired. By that time, the sixty-day time period of section 409.021(c) will have passed. Construing section 409.021(c) as Marta does would

5

bar carriers from disputing a claim based on section 409.007 unless the issue is raised pre-emptively within sixty days of notice of injury—well before a beneficiary's one-year deadline to file a death claim has expired. This interpretation would largely nullify section 409.007's one-year bar by compelling carriers to assert the defense before it has grounds to do so or else waive it. *See, e.g.*, *Edwards v. City of Tomball*, 343 S.W.3d 213, 221 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("Construction of a statute that would render a provision useless is not favored in the law.").

Marta also relies on rule 132.17(b), which is expressly applicable to death benefit claims and establishes a similar sixty-day deadline for the carrier to file a notice of denial if the carrier believes it is not liable for the death or the death is not compensable.[3] Again, the rule's intent as discerned from its text is to establish timeframes for filing notices of denial on death cases and to require such notices to be based on the results of the carrier's prompt investigations. *See* 28 Tex. Admin. Code § 132.17(a). But the rule specifically contemplates that a death benefits claim may be filed *after* a carrier's sixty-day period to contest the work-related compensability of an employee's death has passed, as reflected in subsections 132.17(e) and (f). Upon receiving a death benefits claim in accordance with rule 122.100, subsection (e) requires the carrier to "review the evidence provided by the beneficiary to determine whether the person is entitled to death benefits." *Id*. §

---

[3] Rule 132.17(b) provides, in pertinent part:

> If the carrier believes that it is not liable for the death or that the death was not compensable, the carrier shall file the notice of denial of a claim (notice of denial) in the form and manner required by § 124.2 of this title (relating to Carrier Reporting and Notification Requirements). **If the notice of denial is not filed by the 60th day as required [after notification of death], the carrier may not raise an issue of compensability or liability and is liable for any benefits that accrued and shall initiate benefits in accordance with this section.**

28 Tex. Admin. Code § 132.17(b) (emphasis added).

6

132.17(e). If, upon completing its review, the carrier believes the claimant is not eligible to receive death benefits, then the carrier retains the right to dispute entitlement by filing within a specified time period a notice of dispute in the form required by rule 124.2, so that the matter can be resolved through the Division's dispute resolution process. *See* 28 Tex. Admin. Code § 132.17(f). The deadline for the carrier to dispute eligibility is fifteen days after the latest of three potential dates: (1) the date the carrier received the death benefits claim; (2) the date of final adjudication of the carrier's denial of compensability or liability under rule 124.2 and rule 132.17(b); or (3) the expiration of the carrier's right to deny compensability/liability under rule 132.17(a). *Id*. at § 132.17(f)(1). Construing these enumerated deadlines in light of the entire rule, it is clear that if the date the carrier receives a death benefits claim is the latest of the three potential triggering dates, then the carrier has fifteen days to investigate and potentially dispute entitlement even if the sixty-day period under subsection (b) has passed. For example, if the carrier received a death benefits claim 180 days following a death notification and the documentation provided by the claimant showed that the claimant was not the decedent's legal beneficiary, the carrier has the right to dispute eligibility on that basis even though the sixty-day period under subsection (b) has expired.

Accordingly, contrary to Marta's argument, neither rule 132.17(b) nor section 409.021 can be construed reasonably to require carriers to raise (or else waive) a section 409.007 defense within sixty days of receiving a death notification because facts supporting the defense will not arise until, at the earliest, a potential beneficiary files a claim after the one-year anniversary of the employee's death. The carrier generally has the right and duty to investigate entitlement to benefits upon receiving a death benefits claim no matter when the claim is filed. However, if the claim is

7

filed after the one-year deadline expires, the carrier's failure to raise the defense within the sixty-day period in rule 132.17(b) or section 409.021(c) does not bar the defense because the grounds for asserting it would not have existed during the sixty-day period. And Marta's interpretation of rule 132.17(b) would render subsections (e) and (f) meaningless, again a result we avoid. *See, e.g.*, *Edwards*, 343 S.W.3d at 221.

Relevant commission appeals decisions, though not controlling, support the court's holding.[4] *See* Tex. Workers' Comp. Comm'n, *Appeal No. 990791*, 1999 WL 34811891 (Jan. 1, 1999) (construing section 409.007 and concluding that beneficiary was barred from receiving death benefits for failure to timely file claim within one year of death; section 409.007 raised more than sixty days after notice of injury); *cf. also* Tex. Workers' Comp. Comm'n, *Appeal No. 042090*, 2004 WL 2932809 ("Section 409.007 and Tex. W.C. Comm'n, 28 Tex. Admin. Code § 122.100 (Rule 122.100) require that a claim for death benefits be filed with the Commission not later than the first anniversary of the date the decedent died. Failure to timely file a claim bars the claim unless the potential beneficiary is a minor or incompetent, or good cause exists for the failure to timely file the claim."). Further, the appeals panel decisions cited by Marta are distinguishable from the present facts or do not provide sufficient information to support a comparison. *See* Tex. Workers' Comp. Comm'n, *Appeal No. 060631-S*, 2006 WL 1593919 (May 30, 2006) (ruling carrier waived section 409.007 defense because it first filed a dispute after the one-year period expired but did not assert the section 409.007 defense in that document); Tex. Workers' Comp. Comm'n, *Appeal No. 090075*, 2009 WL 909268 (Mar. 26, 2009)

---

[4] "'Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute.'" *Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 623 (Tex. 2007) (quoting *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993)).

(ruling self-insured employer waived section 409.007 defense because employer did not raise it within "reasonable time" after "discovering facts indicating [the] defense" might apply; but decision does not describe the relevant facts or state how much time passed between claimant's filing of death claim and employer's first assertion of section 409.007).[5]

Regarding the characterization of section 409.007 as an affirmative defense, I assume it is an affirmative defense because the parties have engaged that assumption. As the majority notes, the Commission has stated or implied that section 409.007 is an affirmative defense that a carrier must timely raise or else it is waived. *See* Tex. Workers' Comp. Comm'n, *Appeal No. 060631*, 2006 WL 1593919 (May 30, 2006). Similarly, the Third Court of Appeals has characterized section 409.007 as a "limitations defense" that can be waived. *Tex. Workers' Comp. Comm'n v. Tex. Mun. League Intergov'l Risk Pool*, 38 S.W.3d 591, 599 & n.11 (Tex. App.—Austin 2000), *aff'd on other grounds by* 74 S.W.3d 377 (Tex. 2002). Although the Supreme Court of Texas affirmed the court of appeals' judgment in *TML Risk Pool*, it did so on different grounds than the court of appeals relied upon and without discussing whether section 409.007 is an affirmative defense and whether a carrier may raise it at any time. Those issues are not before us and to the extent the majority implies that a "reasonable time" deadline applies, that is a question we need not decide. The court need not express opinion as to when, if ever, it becomes too late for a carrier to dispute timeliness of a death benefits claim on section 409.007 grounds, as we are considering only whether Zurich's failure to

---

[5] In *Appeal No. 090075*, the employer first asserted section 409.007 at the BRC, which occurred at least five months, and as many as seven months, after the one-year period expired. Tex. Workers' Comp. Comm'n, *Appeal No. 090075*, 2009 WL 909268, at *4. But the decision does not indicate when the claimant filed the death benefits claim or the nature of the evidence supporting the ruling that the employer should have asserted the defense sooner than the BRC.

assert the defense within sixty days of the notice of death waived the defense. The panel unanimously agrees it did not.

## B.     Good Cause

The remaining basis for summary judgment in Marta's favor is the trial court's ruling that she conclusively established good cause for filing her claim after the one-year deadline, which Zurich challenges in its first issue. Zurich filed a cross-motion for summary judgment asserting that Marta's claim was untimely and without good cause as a matter of law, or that Marta had no evidence of good cause. The majority concludes that neither side is entitled to summary judgment and remands the case for trial on good cause. I respectfully disagree and would render judgment for Zurich because the record contains no legally sufficient evidence of good cause and the reasons offered by Marta do not constitute good cause as a matter of law.

### 1.     *Additional Undisputed Facts*

To the familiar summary judgment standards of review cited by the majority, I add the following: evidence favoring a summary judgment movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965); *Houston Lighting & Power Co. v. Wheelabrator Coal Servs. Co.*, 788 S.W.2d 933, 936 (Tex. App.— Houston [14th Dist.] 1990, no writ); *see Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 491 (Tex. 2015) (considering uncontroverted summary judgment evidence); *Balderas-Ramirez v. Felder*, 537 S.W.3d 625, 634 (Tex. App.—Austin 2017, pet. denied) (same); *KBG Invs., LLC v. Greenspoint Prop. Owners' Ass'n, Inc.*, 478 S.W.3d 111, 115 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (same).

The summary judgment record establishes undisputed facts the majority does not mention. I expand on the factual background because several uncontroverted

10

facts are relevant to the good cause issue and support the judgment I believe should issue.

Encarnacion suffered a work-related compensable injury on April 15, 2010, when he was burned by hot oil while working at the DoubleTree Hotel in Austin. The employer timely provided a first report of injury to its workers' compensation insurance carrier, Zurich. Zurich promptly notified the Division. Zurich paid workers' compensation benefits to Encarnacion from April 17, 2010 to May 14, 2010. Encarnacion died on May 13, 2010.

Zurich initially disputed that Encarnacion's death was related to his job injury and filed a dispute of death benefits with the Division on June 2, 2010. Zurich sent a copy to Encarnacion's address in Pflugerville, Texas. Marta did not receive this notice. After further investigation, Zurich determined that Encarnacion's death in fact resulted from his work-related injury. That matter was resolved favorably to Marta at the BRC and is not at issue.

Zurich began attempts to identify and locate Encarnacion's beneficiaries. Zurich understood that Encarnacion was married and believed his widow to be Marta. Initial attempts to confirm Marta's address or telephone number proved unsuccessful. In October 2010, Zurich sent an investigator to Encarnacion's Pflugerville address to verify whether Marta lived there, but the investigator was unable to confirm she shared this address.

Meanwhile, Marta hired an attorney to investigate potential medical malpractice liability for Encarnacion's death. This attorney instructed Encarnacion's family not to speak with representatives from the "insurance company." Zurich's investigator received a voicemail from an attorney claiming to represent Marta. The investigator contacted the attorney and confirmed that he represented Marta in connection with Encarnacion's death. Zurich's claim file

11

indicates it was awaiting receipt of a representation letter, but the record does not show that Zurich received one or that the attorney otherwise contacted Zurich or the Division. The attorney's representation of Marta terminated, but the record does not show when the relationship ended.

Also in October 2010, Zurich's adjuster, Denise Limon, learned that Marta scheduled a meeting with James Prendeville at the DoubleTree Hotel to discuss Encarnacion's retirement benefits. Prendeville agreed to call Limon during the meeting so Limon could discuss Marta's potential claim for death benefits. Limon informed Prendeville that Encarnacion's death was compensable and sent him a death benefits claim form to provide to Marta at the meeting. However, Marta did not attend the scheduled meeting, and it is undisputed that she never received a death benefit claim form from Zurich. Marta testified in her affidavit that she received no letters from Zurich or the Division during 2010.

The employer provided Limon with a contact phone number for Marta's daughter, Nancy Diaz, on November 15. According to Limon, she called Nancy that day. Nancy testified in an affidavit that she recalled "one phone call and one voicemail from a female person which [she] received in late 2010, and [she] told this person we had an attorney Michael Wash representing us and that she should contact him." It is undisputed that Marta's counsel and Limon never spoke. Limon left at least one other voicemail message with Nancy in February 2011 seeking contact information for the family's attorney, but received no response.

Limon sought a BRC with the Division on May 11, 2011 to determine "entitlement to death benefits and/or burial benefits." Limon stated in a letter that Zurich attempted to contact Marta on November 15, 2010, February 4, 2011, April

11, 2011, and May 11, 2011.[6]  Limon also designated Marta's contact information as the same Pflugerville address to which Zurich previously mailed information addressed to Encarnacion.  Zurich's claim file notes indicate that Limon left a voicemail with "the widow" on May 11.  The Division mailed a notice to Marta scheduling a BRC for June 14.  Marta received this notice in May.  Marta and Nancy went to the BRC on June 14 but were told they arrived late, so the conference was reset.

Marta retained attorney Richard Pena, who filed a claim for death benefits on June 21, 2011.  Marta filed an amended claim for death benefits on August 15, 2011.

The Division conducted a BRC on November 17, 2011.  Marta attended with counsel and provided copies of her claim and amended claim for death benefits to Zurich, which was the first time Zurich received notice of Marta's claim.  The parties did not reach agreement at the BRC and twelve days later, on November 29, Zurich filed with the Division a "Notice of Denial of Compensability/Liability and Refusal to Pay Benefits" and mailed a copy to Encarnacion's address.  Citing section 409.007, Zurich denied the claim for death benefits because Marta did not file the claim within one year.

---

[6] Limon's claim file documents efforts to contact Marta on November 15, 2010, February 4, 2011, and May 11, 2011, but not on April 11, 2011.

2. *Analysis*

Marta's factual contentions supporting her good cause argument condense to two reasons: (1) she was never provided any information about filing a claim from Zurich or the Division, citing several administrative rules or statutes with which she contends Zurich failed to comply; and (2) she was never notified, and did not believe, that Encarnacion's death was work-related. The trial court agreed with the first reason and ruled specifically that "good cause exists for Marta Diaz's late filing of a claim due to Defendant Zurich's failure to notify the Plaintiff and the [Division] of the compensable death under [Division] Rule 132.17." Rule 132.17(d) requires a carrier that "identifies or becomes aware of a potential beneficiary" to "notify the potential beneficiary of potential entitlement to benefits, using a plain language notice containing language and content prescribed by the Commission." 28 Tex. Admin. Code § 132.17(d).[7] Zurich acknowledges it did not send the notice contemplated by rule 132.17(d).

As to the meaning of "good cause," we do not write on a blank slate. For decades, Texas courts have measured good cause in the workers' compensation context by whether the claimant has pursued rights with such diligence as a reasonably prudent person would have used under the same or similar circumstances. *See, e.g.*, *Lee v. Houston Fire & Cas. Ins. Co.*, 530 S.W.2d 294, 296 (Tex. 1975); *Tex. Cas. Ins. Co. v. Beasley*, 391 S.W.2d 33 (Tex. 1965); *Hawkins v. Safety Cas. Co.*, 207 S.W.2d 370, 371-72 (1948); *Providence Lloyd's Ins. Co. v. Smith*, 828 S.W.2d 328, 329 (Tex. App.—Austin 1992, writ denied); *City of Houston v. Garrett*, 816 S.W.2d 800, 802 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *Liberty Mut. Ins. Co. v. Stanley*, 534 S.W.2d 191, 192 (Tex. Civ. App.—Texarkana 1976,

---

[7] The notice must be sent within seven days of the date the carrier identified or was otherwise made aware of the identity and means of contacting the potential beneficiary. *Id*.

14

writ ref'd n.r.e.).  It is a test of ordinary prudence.  *See Allstate Ins. Co. v. King*, 444 S.W.2d 602, 604-05 (Tex. 1969); *Garrett*, 816 S.W.2d at 802.  To be sure, the minimal degree of diligence required need be only that which a reasonably prudent person would have exercised under the same circumstances, but the beneficiary must pursue the claim with reasonable diligence or demonstrate incapacity to have exercised diligence.[8]

It is helpful to recall what it means to be diligent.  "Due diligence" is "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 808-09 (Tex. 2012) (citing BLACK'S LAW DICTIONARY (9th ed. 2009)).  The plain meaning of the words "diligent" or "diligence" denote or embody effort; "diligent" means "having or showing care and conscientiousness in one's work or duties." NEW OXFORD AMERICAN DICTIONARY 486 (Angus Stevenson & Christine Lindberg eds., 3d ed. 2010).  This court has defined "diligence" as "careful and persistent application or effort" or "persevering application: devoted and painstaking application to accomplish an undertaking." *Webster v. Thomas*, 5 S.W.3d 287, 291 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see also Scott v. Cameron Cty.*, No. 13-05-00117-CV, 2007 WL 1365442, at *2 (Tex. App.—Corpus Christi-Edinburg May 10, 2007, no pet.) (mem. op.) ("The term 'diligence' is defined as 'a continual effort to accomplish something' and 'care; caution; the attention and care required from a person in a given situation.'").

The formulation and application of the good cause test over the years, coupled with the commonly understood meaning of the word "diligence," signals that a key

---

[8] *See Safety Cas. Co. v. Walls*, 117 S.W.2d 879, 883-84 (Tex. Civ. App.—Eastland 1938, writ dism'd) (discussing potential for good cause if claimant is mentally or physically incapacitated during period of delay).

part of pursuing rights by exercising diligence requires at least some action by the claimant or beneficiary; it requires evidence of "care" and "prudence" in the prosecution of the claimant's workers' compensation rights. *See Lee*, 530 S.W.2d at 296. Claimants must *do* something—anything a reasonable person similarly situated would have done—to advance their rights. Satisfactory care and prudence may include, depending on circumstances, seeking and relying upon a doctor's opinion. Generally, inaction uncoupled from incapacity is neither diligence nor good cause, absent reasonable reliance on medical or other representations justifying delay.

Marta presented no evidence showing that she took any action to advance her workers' compensation rights. She explains that she did not know her rights because Zurich did not inform her of the law. Yet, among the most fundamental principles gleaned from jurisprudence examining good cause in the workers' compensation context is that claimants are presumed to know the law. *See, e.g.*, *King*, 444 S.W.2d at 605; *Garrett*, 816 S.W.2d at 802. Ignorance of workers' compensation law does not constitute good cause for delay in filing a claim. *King*, 444 S.W.2d at 604-05 (ignorance of available workers' compensation benefits and related filing requirements does not excuse delay in filing claim); *Krueger v. Atascosa Cty.*, 155 S.W.3d 614, 621 (Tex. App.—San Antonio 2004, no pet.); *Garrett*, 816 S.W.2d at 802 ("[A] workers' compensation claimant is presumed to know the law, and mere ignorance of the one-year filing requirement will not constitute good cause for delay."); *Dillard v. Aetna Ins. Co.*, 518 S.W.2d 255, 257 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.) (same); *U.S. Fid. & Guar. Co. v. Herzik*, 359 S.W.2d 914, 916 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.). Though Zurich did not send Marta the notice contemplated by rule 132.17(d), Marta is nonetheless charged with

16

knowledge of the rights such a notice would have provided.[9] *See, e.g.*, *King*, 444 S.W.2d at 605; *Garrett*, 816 S.W.2d at 802. Zurich's failure to inform Marta of rights the law presumes she knows cannot constitute legally sufficient evidence of good cause. Therefore, Zurich's failure to comply with rule 132.17(d) neither supports summary judgment in Marta's favor nor defeats Zurich's entitlement to summary judgment. Zurich's failure to send the notice under rule 132.17(d) is not a relevant factor in determining good cause.

Marta has not cited any court cases or decisions from the workers' compensation appeals process proposing that an insurance carrier's failure to notify potential beneficiaries under section 132.17(d) establishes good cause for late filing a claim for death benefits, and I have found none. Rule 132.17 does not speak to whether an insurance carrier's failure to identify or notify a potential beneficiary constitutes good cause for late filing. *See* 28 Tex. Admin. Code § 132.17; *cf. also Moran v. City of Houston*, 58 S.W.3d 159, 162-63 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (explaining that, when lawmakers include a term or phrase in one section of a statute, but exclude it in another, courts must presume that the lawmakers had a reason for excluding the term and "that term should not be implied where it has been excluded").

We simply cannot hold as the majority does and remain consistent with long-standing Texas law. The majority's conclusion that legally sufficient evidence of good cause exists when a carrier fails to tell potential workers' compensation beneficiaries of law they are deemed to know places our court in irreconcilable conflict with the Supreme Court of Texas and every other Texas court addressing the issue (including ours), leaving the instant decision as an outlier. Whether that

---

[9] The notice approved by the Division informs potential beneficiaries that a death benefits claim must be filed with the Division no later than one year after the employee's death.

17

means a carrier's failure to comply with rule 132.17(d) has little consequence insofar as good cause is concerned is a matter for the Supreme Court of Texas or the legislature.[10]

I next address Marta's second asserted factual basis for good cause. Marta contends good cause exists because she was not notified or otherwise aware that her husband's death was work-related.[11] She states in her affidavit that Encarnacion did not appear to have died from his work injury because he died one month after the injury. As the majority correctly observes, a beneficiary's reasonable belief that an employee's death was not compensable or work-related can constitute evidence of good cause for filing a claim after the deadline. *See, e.g.*, *Lee*, 530 S.W.2d at 298 (fact question on good cause); *Hawkins*, 207 S.W.2d at 372-73 (fact question on good cause); *Davis v. Tex. Emp'rs Ins. Ass'n*, 516 S.W.2d 452, 454-56 (Tex. Civ. App.—El Paso 1974, no writ); *Travelers Ins. Co. v. Rowan*, 499 S.W.2d 338 (Tex. Civ. App.—Tyler 1973, writ ref'd n.r.e.); *Liberty Mut. Ins. Co. v. Wilson*, 495 S.W.2d 579 (Tex. Civ. App.—Texarkana 1973, writ ref'd n.r.e.); *Allstate Ins. Co. v. Maines*, 468 S.W.2d 496, 499-500 (Tex. Civ. App.—Houston [14th Dist.] 1971, no writ); *Teague v. Tex. Emp'rs' Ins. Ass'n*, 368 S.W.2d 643 (Tex. Civ. App.—Austin 1963, writ ref'd n.r.e.); *Hurd v. Republic Underwriters*, 105 S.W.2d 428, 429 (Tex. Civ. App.—El Paso 1937, writ dism'd). In each of these cases, the claimants reasonably relied on statements or other evidence, typically a doctor's opinion,

---

[10] Requiring carriers to notify potential beneficiaries of the one-year deadline is unquestionably laudable and no doubt helps minimize the number of occasions, such as the present one, when beneficiaries miss the deadline. But the rule's requirement does not change long-standing Texas law charging workers' compensation beneficiaries with knowledge of the deadline regardless whether the notice is sent or received.

[11] The trial court did not adjudicate this ground, but it is appropriately considered in this case's current posture. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *FinServ Cas. Corp. v. Transamerica Life Ins. Co.*, 523 S.W.3d 129, 150 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

supporting a reasonable belief that the injury or death was not work-related. *See Hawkins*, 207 S.W.2d at 371 (fact issue on good cause because plaintiff relied on physician who assured him injury not serious); *Davis*, 516 S.W.2d at 454-56 (fact issue on good cause precluded summary judgment when widow relied on death certificate showing husband died of natural causes due to heart failure in failing to timely file claim); *Maines*, 468 S.W.2d at 499-500 (employee had good cause for late filing claim for compensation when she was told by several physicians that back pain was not caused by on-the-job injury); *Hurd*, 105 S.W.2d at 429 (fact issue on good cause when widow relied on physician's statement that she had no claim because her husband died of arteriosclerosis rather than a work-related injury); *see also INA Tex. v. Smith*, 765 S.W.2d 524, 528 (Tex. App.—Beaumont 1989, writ denied); *Wilson*, 495 S.W.2d at 580-81 (employee relied on employer and physicians that injury not work-related); *Teague*, 368 S.W.2d at 643-45. And good cause can exist when a claimant reasonably relies on a cause-of-death assessment by someone other than a doctor, as *Davis* illustrates. *Davis*, 516 S.W.2d at 456 (holding good cause existed even though the death certificate indicating a non-work-related cause of death was signed by justice of the peace).

Here, however, unlike the claimants in *Hawkins*, *Rowan*, *Wilson*, *Maines*, *Teague*, *Smith*, and *Hurd*, Marta neither sought nor received any opinion or representation by a doctor regarding whether Encarnacion's death was related to his job injury. Also, there is no evidence that Encarnacion's death certificate formed the basis of delay, as was the case in *Davis*. Marta's proof on this point consists of her subjective belief that her husband's death was not work-related. But a beneficiary's mere denial of knowledge that the death was work related, no matter how genuine, is not sufficient because "[a] belief that compensation is not payable

19

for the particular injury . . . does not constitute good cause for delay in filing." *King*, 444 S.W.2d at 605.

Moreover, I conclude that the information Marta possessed was sufficient to prompt a reasonable person in her position to at least make inquiries within one year as to whether her husband's death was related to his work injury, which may have resulted in obtaining an opinion or assessment of compensability upon which she could have reasonably relied in delaying filing a claim, or otherwise prompted her to file a timely claim. Encarnacion died merely one month after his still-unhealed burn injury, during which time the carrier paid workers' compensation benefits. Marta immediately hired an attorney to evaluate whether medical negligence was a contributing factor. Marta filed a copy of Encarnacion's death certificate, which indicated that a burn injury to Encarnacion's leg suffered at work was a condition leading to the immediate cause of death. Our record does not show when or how Marta first obtained a copy of the death certificate. Assuming she did not have a copy before May 13, 2011, a reasonable person in Marta's position would not wait over one year before obtaining a copy of her spouse's death certificate, particularly after hiring a lawyer to assess medical malpractice liability. A death certificate showing the cause of death is highly relevant to the lawyer's purpose. Alternatively, if Marta in fact obtained a copy of the death certificate within the one-year period, then she is charged with knowledge of its contents and the failure to assert her rights by May 13, 2011 likewise is not reasonable diligence.

Assuming some evidence of good cause exists because Marta reasonably believed her husband's death was unrelated to his job injury, Marta's lack of knowledge of compensability must also be the *reason* for the delay. *See Harkey v. Tex. Emp'rs' Ins. Ass'n*, 208 S.W.2d 919, 922 (Tex. 1948) ("Advice from a physician that his injuries are not serious constitutes good cause for failure to file a

claim within the prescribed time, provided the claimant, in the exercise of ordinary care, *believes and relies upon that advice*.") (emphasis added). Here, Marta's evidence does not support the proposition that she delayed filing her claim because she did not know her husband's death was work-related. According to her affidavit, Marta filed the claim in June 2011 *before* learning whether her husband's death was related to his burn injury. Thus, Marta filed her claim when she did despite having no awareness of compensability, which does not support the argument that any confusion about compensability was the reason for the thirteen-month delay. *Cf., e.g.*, *Hawkins*, 207 S.W.2d at 385; *Stanley*, 534 S.W.2d at 192-93; *Rowan*, 499 S.W.2d at 341-42; *Wilson*, 495 S.W.2d at 580-81; *Maines*, 468 S.W.2d at 500; *Teague*, 368 S.W.2d at 643-44; *Hurd*, 105 S.W.2d at 429. The claimants in each of those cases filed claims reasonably promptly upon learning that the injury or death was compensable after having delayed filing because they were reasonably led to believe otherwise.

Some courts, including ours, have recognized that reliance on express statements of employers or carriers may constitute good cause for a delayed filing under certain circumstances. *See Lee*, 530 S.W.2d at 296-97 (fact issue on good cause because plaintiff relied on employer's repeated assurances that necessary paperwork had been submitted); *King*, 444 S.W.2d at 604-05 (evidence supported jury finding that plaintiff reasonably believed employer would process and handle insurance claims for injuries); *Moronko v. Consol. Mut. Ins. Co.*, 435 S.W.2d 846 (Tex. 1968) (good cause existed when carrier made affirmative statement that everything would be "taken care of" and claimant relied on that statement); *Garrett*, 816 S.W.2d at 802. Marta presented no evidence or argument that Encarnacion's employer or Zurich made any representations to her upon which she reasonably relied in delaying filing a claim. In fact, Marta denied receiving any communications

21

from the employer or Zurich upon which she could have relied in delaying filing her claim. Presented with a similar scenario, our sister court of appeals in Houston held that good cause for failure to timely file a workers' compensation death benefits claim did not exist as a matter of law. *Petroleum Cas. Co. v. Canales*, 499 S.W.2d 734, 736 (Tex. Civ. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). There, the claimant: (1) had limited education and lacked working knowledge of English; (2) received no documentation from the carrier, the employer, or the Industrial Accident Board; (3) believed her husband's employer would take care of necessary paperwork; and (4) did not learn of her right to death benefits until after consulting a lawyer over one year after her husband's death. *Id*. Thus, faced with facts nearly identical to those cited by the majority here, the court in *Petroleum Casualty* held that good cause for the untimely filing did not exist as a matter of law and rendered judgment in the carrier's favor on the beneficiary's claim. *Id*. at 738. The majority's opinion and judgment conflict with *Petroleum Casualty*.

If the circumstances in *Garrett*, *King*, and *Petroleum Casualty* did not support a good cause finding as a matter of law, neither do the present circumstances. Marta waited over thirteen months before filing a claim and there is no evidence that Zurich, Encarnacion's employer, or a doctor, made any representations to Marta regarding the nature or cause of death, or the claim process, that would have reasonably led to such a delay, as Marta acknowledges in her affidavit. Assuming the truth of Marta's evidence, the record includes no evidence of care, prudence, or diligence, and thus contains no evidence of good cause.

22

Moreover, considering all of the uncontroverted evidence,[12] Marta resisted the carrier's efforts to contact her and inform her of potential rights. The record documents efforts by Zurich in 2010 to confirm that Marta was Encarnacion's spouse, including sending an investigator to the Pflugerville address to confirm whether Marta lived there, seeking information and assistance from Encarnacion's employer to identify and contact Marta, and attempted communication with Marta's daughter and Marta's attorney. Marta's daughter, Nancy, informed Zurich that Marta had retained legal representation. Zurich contacted Marta's attorney and left a message with his office, but the record contains no evidence that he returned the call or otherwise contacted Zurich or the Division. Marta presented no affidavit from her counsel disputing Zurich's evidence in this regard.

Marta does not dispute that Zurich attempted to contact her during 2010, but she testified that she did not receive any letters addressed to her from Zurich or the Division in 2010, and she did not speak to anyone from Zurich or the Division during 2010. Despite Nancy's knowledge in late 2010 that someone was attempting to contact Marta through her counsel, the record shows no evidence that Marta, Nancy, or Marta's counsel followed up on those efforts.

Limon further testified that she left another voicemail with Nancy in February 2011 but received no response. Neither Marta's nor Nancy's affidavits controvert Zurich's attempts to communicate during 2011.

According to Marta's summary judgment evidence, she told the Division at the BRC that she refused to communicate with Zurich on advice of counsel, who was not familiar with workers' compensation law. However, a party's reliance on

---

[12] *See Cantey Hanger, LLP*, 467 S.W.3d at 491; *Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47; *Balderas-Ramirez*, 537 S.W.3d at 634; *KBG Invs., LLC*, 478 S.W.3d at 115; *Houston Lighting & Power Co.*, 788 S.W.2d at 936

23

attorney advice does not constitute good cause as a matter of law. *See St. Paul Fire & Marine Ins. Co. v. Lake Livingston Props., Inc.*, 546 S.W.2d 404, 407 (Tex. Civ. App.—Beaumont 1977, writ ref'd n.r.e.) (holding that attorney who filed personal injury suit but did not file claim for workers' compensation benefits was agent of worker and failure to file claim was attributable to worker; no good cause for filing claim late as a matter of law); *see also Tex. Emp'rs' Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 95 (Tex. 1961); *Tex. Emp'r's Ins. Ass'n v. Tobias*, 614 S.W.2d 901, 902-03 (Tex. App.—Eastland 1981, writ dism'd); *Tex. Emp'r's Ins. Ass'n v. Dickson*, 489 S.W.2d 655, 657 (Tex. Civ. App.—El Paso 1972, writ ref'd n.r.e.).

The majority also points out that Zurich did not notify the Division or Marta that it withdrew its initial dispute to compensability filed on June 2, 2010. This is irrelevant. Marta did not know that Zurich ever disputed compensation because she stated in her affidavit that she did not receive any communication from Zurich in 2010, which necessarily includes Zurich's June 2, 2010 notice. Thus, Zurich's dispute (or its withdrawal) could not have been a consideration that influenced Marta's decision to delay filing a claim or to file a claim when she did. *See King*, 444 S.W.2d at 605.

The court's decision today not only lowers the minimum showing required for good cause to a point beneath that set by any of the multitude of cases discussing the issue, the majority has divested the principle of diligence of its essential meaning. According to the majority, a workers' compensation claimant can create a fact question on good cause without exercising any care or prudence at all. The result leaves this court at odds with an entire body of law, including our own precedent in *Garrett* and a decision from the First Court of Appeals on materially indistinguishable facts. *Petroleum Casualty*, 499 S.W.2d at 735. While we construe

24

workers' compensation statutes liberally in favor of employees and beneficiaries,[13] we do not relax legal burdens imposed by common law or rules, or apply those burdens differently, in workers' compensation cases than we do in other cases. *See Truck Ins. Exch. v. Michling*, 364 S.W.2d 172, 173 (Tex. 1963). Generally, the question of diligence is one of fact; however, when the evidence negates good cause, as I believe it does here, the question becomes one of law. *See Hawkins*, 207 S.W.2d at 371-72; *Maryland Cas. Co. v. Kemp*, 382 S.W.2d 322, 324 (Tex. Civ. App.—Houston 1964, writ ref'd n.r.e.); *Herzik*, 359 S.W.2d at 916-17.

On this record, I conclude, as this court concluded in *Garrett*, that Marta's "continuing inaction is attributable only to a lack of diligence." *Garrett*, 816 S.W.2 at 802 (citing *Petroleum Casualty*, 499 S.W.2d at 736). The summary judgment evidence establishes as a matter of law that Marta did not exercise the degree of diligence in filing her claim that a reasonably prudent person would have exercised under the same or similar circumstances. *Id*. (citing *Beasley*, 391 S.W.2d at 35-36). Lack of knowledge regarding the availability of a claim for death benefits is not good cause for the failure to timely file a claim. *See, e.g.*, *King*, 444 S.W.2d at 605; *Krueger*, 155 S.W.3d at 621; *Herzik*, 359 S.W.2d at 916. And a claimant's attorney's failure to timely file a claim is imputed to the claimant; the claimant's reliance on the lawyer is not good cause as a matter of law. *See, e.g.*, *Wermske*, 349 S.W.2d at 90; *Tobias*, 614 S.W.2d at 902-03; *Lake Livingston Props., Inc.*, 546 S.W.2d at 406-07. To the extent the evidence raises a genuine issue of material fact that good cause existed for any period of time, it does not raise a fact question that good cause existed for a full year and up to the time she filed her claim. *See Stanley*, 534 S.W.2d at 193 (good cause must exist up to date of filing claim); *Lee*, 530 S.W.2d at 296; *Beasley*,

---

[13] *See Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012); *Tex. Gen. Indem. v. Tex. Workers' Comp. Comm'n*, 36 S.W.3d 635, 640 (Tex. App.—Austin 2000, no pet.).

391 S.W.2d at 34; *Garrett*, 816 S.W.2d at 802; *Baker v. Travelers Ins. Co.*, 483 S.W.2d 10, 13 (Tex. Civ. App.—Houston (14th Dist.) 1972, no writ) (five month delay in filing death benefits claim after grounds for good cause expired was too long as matter of law).

Under the authority discussed above, Zurich demonstrated that Marta lacked good cause for filing her claim beyond the one-year anniversary of the employee's death. *Cf., e.g.*, *Beasley*, 391 S.W.2d at 35-37. The evidence viewed most favorably to Marta negates good cause as a matter of law, and Marta's evidence fails to raise a genuine issue of material fact. Accordingly, I agree with the majority that the summary judgment in Marta's favor on good cause should be reversed; however, I respectfully dissent from the court's opinion and judgment remanding the case for trial. I would render a take nothing judgment in Zurich's favor.

/s/    Kevin Jewell
Justice

Panel consists of Justices Christopher, Donovan, and Jewell. (Christopher, J., majority).